**In re Oliver L. NORTH (Dutton Fee Application).**

**Division No. 86–6.**

United States Court of Appeals, District of Columbia Circuit.

(Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, as Amended).

Nov. 30, 1993.

Before: SENTELLE, Presiding, BUTZNER and SNEED, Senior Circuit Judges.

### ORDER

PER CURIAM.

This matter coming on to be heard and being heard before the Special Division of the Court, upon the application of Robert C. Dutton for reimbursement of Attorney Fees pursuant to § 593(f) of the Ethics in Government Act of 1978, as Amended, 28 U.S.C. § 591 *et seq.* (1987), and it appearing to the Court for the reasons more fully set forth in the Opinion filed contemporaneously herewith, that the motion is well taken, in part, it is hereby

ORDERED, ADJUDGED and DECREED that the United States reimburse Robert C. Dutton for attorneys' fees he incurred during the investigation of Independent Counsel Lawrence E. Walsh in the amount of $39,946.14 this 30th day of November, 1993.

Opinion for the Special Court filed PER CURIAM.

PER CURIAM:

Robert C. Dutton, a retired Air Force Colonel, seeks reimbursement under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1987) (the "Act"), for attorneys' fees expended by him which he alleges "would not have been incurred but for the requirements of [the Act]."

The Dutton application arises out of an investigation undertaken by the Independent Counsel appointed by this Court on December 19, 1986. In an application filed December 11, 1992, Dutton claims that as a result of that investigation he incurred counsel fees in the total amount of $105,219.80, which he claims to be reimbursable under the Act. Because the Court expected the Final Report of the Independent Counsel in that matter to be beneficial to the Court's determination of the propriety of the claimed attorneys' fees, the Court has delayed action on this petition until a time when the Court has been better advised in those premises. In the meantime, the Court has enlisted, and is grateful for, the advice of the Department of Justice. Although the Department does not have any familiarity with the details of the investigation and the prosecutions arising from it, by reason of the independence of the Counsel as contemplated and compelled by the Act, it has been able to assist the Court with matters not requiring factual familiarity with the investigation. Now having in hand all that we deem necessary to make an educated determination as to the propriety of the petition, we have proceeded by order of even date herewith to allow the same in part.

### I. The Statutory Elements of Reimbursable Fees

#### A. Subject

By its terms, the statute permits the reimbursement of fees only to "an individual who is the *subject* of an investigation conducted by an independent counsel." 28 U.S.C. § 593(f)(1) (emphasis added). The statute does not define "subject," nor have we in prior cases given that term a definitive interpretation. Comments by the Department of Justice on that topic and portions of the application of Dutton give us some pause in applying that part of the statute to Dutton's petition.

██ First, the Department of Justice, noting as have we that the statute does not define "subject," makes reference to the UNITED STATES ATTORNEYS' MANUAL, Title 9, Chapter 11, Section 9–11.150, which defines "subject" for general prosecutorial purposes in the federal courts as follows: "a 'subject' of an investigation is a person whose conduct is within the scope of the grand jury's investigation." We find this Manual definition more helpful than anything available in general or legal dictionaries, as the word "subject" is susceptible of so many different definitions that we might quote one from any dictionary of our choice to include or exclude nearly anyone in the vicinity of an investigation. As the Manual was compiled by experts in the field of federal prosecution for the guidance of professionals in that field, we conclude that the Court should make use of

that expertise, and we do in fact conclude that the Department of Justice definition of "subject" is useful to our inquiry.

■ Unfortunately, accepting the Department's definition of "subject" as useful does not approach a final answer to our question. The Manual definition itself is susceptible of a broad range of further redefinition. Taken broadly, the conduct of any fact witness could be said to be within the scope of the grand jury's investigation. Taken most narrowly, one might say that only the specific target of the investigation will fall within the definition. Neither of these extremes is satisfactory. As to the first, we have previously held that the fee provisions of the Act apply to fees charged that "were reasonably related to a defense to such investigation." *In re Olson,* 884 F.2d 1415, 1427 (D.C.Cir.1989); *In re Donovan,* 877 F.2d 982, 993 (D.C.Cir. 1989). Therefore, a status of "mere witness" is insufficient to confer upon one the brand of "subject" for purposes of the Act. Our determination to this effect is supported by the legislative history of the amendment to the Ethics in Government Act allowing for the fee reimbursement. The report of one house of the adopting Congress admonished that "reimbursement of attorneys' fees [is] warranted, if at all, in only rare instances ... and ... reimbursement should not become a routine event." S.Rep. No. 496, 97th Cong., 2d Sess. 19, *reprinted in* 1982 U.S.C.C.A.N. 3537, 3555. While obviously not a part of the enactment and therefore not binding upon us, this language of the Senate Report is so consistent with the apparent scheme of the Act and with our prior decisions that it reassures us of the correctness of our holding. The Department of Justice, candidly noting that it is not advised as to the underlying facts of the investigation, suggests that at least an inquiry is appropriate into Dutton's status in this regard, as Dutton's fee petition asserted that he "never was considered by the independent counsel to be anything but a potential witness." The Department suggests that this statement by the petitioner may constitute a disqualifying admission.

■ While the suggestion by the Department is worthy of consideration, with our more fulsome access to the underlying investigation, we do not find it dispositive. It may seem evident today (although access to the sealed Report of the Independent Counsel assures us that it is by no means certain) that Dutton was never regarded as a potential defendant, but that is hindsight. At the time that Dutton retained counsel and incurred the fees in his application, he knew what his conduct was and what the potential scope of the Independent Counsel's investigation was. He knew that his conduct was within that scope, not merely in the sense of a witness who might be called upon to testify at the trials of others, but also as a person toward whom the Independent Counsel might reasonably be expected to point the finger of accusation. It is as of the time of incurring the fees that we must determine Dutton's status as a "subject," not at the time of the close of the Report. Therefore, we conclude that the ultimate status of Dutton as witness, not defendant, does not take him out of the category of "subject" entitled to counsel fees under the Act during such time as he remained a potential defendant.

■ We further note that the Independent Counsel obtained from the United States District Court for the District of Columbia an immunity order of March 6, 1987, granting use immunity for testimony Dutton was expected to give, and apparently did give, thereafter. The Department of Justice rightly suggests that we should examine this event to determine if it has bearing on Dutton's status as a "subject" under the Act, even if it is not necessarily determinative. The federal use immunity statute, 18 U.S.C. § 6002, confers immunity only against the use of the testimony compelled under the immunizing order; "it does not confer transactional immunity under which the witness could not be prosecuted at all for the transaction about which he testifies." *United States v. Poindexter,* 859 F.2d 216, 219 (D.C.Cir. 1988) (citing *Kastigar v. United States,* 406 U.S. 441, 461, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972)). We therefore conclude that an individual who would otherwise qualify as a "subject" of an independent counsel investigation does not automatically lose that status (and his right to seek reimbursement of attorneys' fees) merely because the indepen-

dent counsel exercises his discretion to obtain use immunity for that individual in order to secure his testimony against others.

■ Nonetheless, although the grant of use immunity is not dispositive, it does change the reasonable perception, even without the benefit of hindsight as to whether the attorneys' fees incurred by the purported "subject" after the grant of immunity "were reasonably related to a defense to" the independent counsel's investigation. As a general proposition, such an immunized witness will no longer be a "subject." We conclude that this is the case as to Dutton. True, the Independent Counsel in the present investigation did prosecute at least two persons previously afforded use immunity. *United States v. North*, 910 F.2d 843 (D.C.Cir.1990); *United States v. Poindexter*, 951 F.2d 369 (D.C.Cir.1991). But, in each of those cases the use immunity was conferred, not by the Independent Counsel but by a congressional investigating committee, without the connivance of and indeed over objections of the Independent Counsel. *See North*, 910 F.2d at 863 (quoting the Independent Counsel's memorandum to congressional committees concerning use immunity).

■ In sum, we conclude that as a general proposition, the "subject" requirement of the Act means that an individual eligible for reimbursement of attorneys' fees must be one whose conduct was within the scope of the grand jury investigation, in the sense that the grand jury was examining conduct of his in a way that would lead a reasonably counseled person at the time of incurring the fees to believe that there was a realistic possibility that he would become a defendant. While a review of the exact factual circumstances that cause us to conclude that Dutton was a potential defendant from the commencement of the investigation until the time that he received use immunity would require a more extensive restatement of the Independent Counsel's Report than we deem appropriate in a published opinion, we do so conclude. Shortly put, the Report itself describes Dutton as an employee of retired Air Force Major General Richard V. Secord in the very enterprise which generated for Secord the status of defendant in an Independent Counsel case. While no indictment names Dutton, frequent indictment references to Secord acting in concert with others cover the activities and period of Dutton's employment.

We therefore conclude that a reasonable person situated as Dutton was would have defended against the Independent Counsel's investigation. Therefore, he occupied the status of "subject." We further conclude that, for purposes of the Act, he lost that status at such time as the attorneys he employed in that defense successfully negotiated for him the status of immunized witness as opposed to likely defendant. Thus, we will subtract from the award of counsel fees any incurred after the obtaining of the immunity order on March 6, 1987.

B. "During" the Investigation

■ The statute provides reimbursement only for "attorneys' fees incurred ... during [the independent counsel's] investigation." 28 U.S.C. § 593(f)(1). Thus, as we have previously noted, "Congress did not provide in section 593(f) for the payment of fees incurred prior to the appointment of independent counsel." *In re Nofziger*, 938 F.2d 1397, 1403 (D.C.Cir.1991). Because the fee award is a consent to suit by the United States, a sovereign otherwise absolutely immune, "[t]he limitations and conditions that Congress imposes on [such a waiver] must be strictly observed." *Id.* (citing *Soriano v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)). In an amendment to his application, Dutton has candidly agreed that $12,543.67 of his attorneys' fees and expenses were incurred prior to the appointment of the Independent Counsel on December 19, 1986, and he concedes that these must be deducted from the fees prayed.

C. The "But for" Requirement

■ The statute requires that to be reimbursable, the attorneys' fees must be such as "would not have been incurred *but for* the requirements of [the Ethics in Government Act]." 28 U.S.C. § 593(f)(1). Therefore, "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case*, 890 F.2d 451,

452 (D.C.Cir.1989). The purpose in the award of reimbursement for fees that would not have been incurred "but for" the Act is to ensure that "officials [and here derivative 'subjects'] who are investigated by independent counsels will be subject only to paying those attorneys' fees that would normally be paid by private citizens being investigated for the same offense by" federal executive components such as the United States Attorney. *Id.* at 452–53 (citing S.REP. No. 496, 97th Cong., 2d Sess. 18 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3554 (referring to "fees [that] would not have been incurred in the absence of the [independent counsel] law")).

 It is not always apparent from the face of an indictment or the recitation of the role of a subject in an investigation whether such a subject would have incurred the same fees had the case been handled by the Department of Justice or other executive authorities rather than the Independent Counsel. In *Olson,* we found the "but for" requirement to be met where the independent counsel duplicated ground previously covered in the preliminary investigation conducted by the Department of Justice, 884 F.2d at 1420; where the Independent Counsel sought an expansion of her prosecutorial authority, *id.* at 1420–21; where the subject incurred legal fees challenging the constitutionality of the Independent Counsel Act, *id.* at 1421; and where the subject incurred fees for the preparation of comments to the Independent Counsel's report pursuant to the Act which were reasonably related to the substantive defense, *id.* at 1422.

In *Donovan,* we found the requirement met where it was apparent that if the Department of Justice had received the same allegations against an ordinary citizen, there might well have been only "a non-public summary investigation" instead of the extended investigation conducted because of strictures specified in 28 U.S.C. § 592(a)(2). 877 F.2d at 989. In *Nofziger,* we held that a subject had not satisfied the "but for" requirement where he had shown "no unique special factual features that but for the requirement of the Act would have permitted a quick termination if the investigation were conducted outside the Act." 925 F.2d 428, 439. But in

so doing, we recognized that in enacting the 1983 amendments creating the right to reimbursement, Congress was motivated by an intent "to correct an unequal *application* of 'the criminal law,' when high public officials were investigated under the Act in circumstances where private citizens would not be investigated." *Id.* at 442.

Dutton contends, and we agree, that his attorneys' fees during the period for which we allow them fall within this latter rationale. He argues convincingly that his position as a "subject" was created principally by the decision of the Independent Counsel to treat as a criminal conspiracy efforts to circumvent the *Boland* Amendments. The *Boland* Amendments were riders to the Department of Defense Appropriation Act, 1983, Pub.L. No. 97–377, 96 Stat. 1833, 1865 (1982), prohibiting the Central Intelligence Agency from spending money "for the purpose of overthrowing the government of Nicaragua." *Id.* From the record before us, specifically the Report of the Independent Counsel and the investigation conducted by Attorney General Meese on behalf of President Reagan reported therein, we determine that executive branch authorities never treated circumvention of the *Boland* Amendments as having criminal consequences. We therefore agree with Dutton's proposition that a politically appointed Attorney General as the representative of the Executive would never have subjected such attempts to criminal prosecution. Therefore, the investigation would never have occurred, nor the fees have been incurred, "but for" the appointment of the Independent Counsel under the Act.

Unsurprisingly, given the fact-specific nature of each independent counsel's undertakings, Dutton's facts do not fit neatly into any box created by a prior opinion. Perhaps the closest prior authority is *In re Sealed Case.* There we found the "but for" requirement to be met where the "Independent Counsel conducted a thorough investigation and actually examined applicant's tax returns, and his financial dealings, for nine years from 1976 to 1984," but where in the "opinion [of the Court] the ordinary examination of a taxpayer for a § 7203 violation would have been substantially less probing." 890 F.2d at 454.

Similarly, we conclude that in this case no criminal investigation paralleling the present one would have occurred at all "but for" the Act and, therefore, hold that Dutton has met all eligibility requirements for reimbursement under the Act.

## II. Reasonableness

In addition to the statute's specific eligibility requirements discussed above, the Act, like other fee award statutes, permits awards only of "reasonable attorneys' fees." 28 U.S.C. § 593(f)(1). Here, we have reviewed the portion of the fees and expenses remaining after deductions for the items discussed above and find that they generally meet the standards of reasonableness that we have applied in the cases we have previously decided under the Act. *See generally In re Olson,* 884 F.2d 1415, 1427 (D.C.Cir.1989); *In re Sealed Case,* 890 F.2d 451, 452 (D.C.Cir.1989); *In re Meese,* 907 F.2d 1192 (D.C.Cir.1990).

We do find certain expense items, albeit small ones, are either insufficiently explained or not justifiable. We will therefore make deductions for them. They consist of items shown on three statements from Dutton's attorneys for "conferences" and two for "miscellaneous." We do not disparage the possible reasonableness of these fees as between attorney and client per their agreement, but they do not have the specificity which demonstrates them to be reasonable items for the taxpayers to adopt. Obviously we have no way of knowing whether they have the causation element presupposed in the "but for" requirement, nor can we assess the reasonableness *vel non* of something described as "miscellaneous." As to the conferences, we presume that those refer to food or refreshments served at conferences as the time involved is always billed under some other item. Therefore, we will disallow the conference billings as we have previously held that "business meals" are not allowable under the Act. *In re Meese,* 907 F.2d at 1204.

There is one more complicating factor in determining the reasonableness of the fees requested. The billing statement of Dutton's attorneys, Heron, Burchette, Rubert & Rothwell, dated March 5, 1987, would make plain precisely how much legal work came before the entry of the order for immunity if it were current through that date. However, with the time lag necessary to professional service billing, that bill is a statement only for services rendered through February 28, 1987. The next statement for services, dated April 2, 1987, is sufficiently detailed to inform a client of precisely the services for which he is paying but is not sufficient as to advise this Court precisely which fees were incurred before the entry of the immunity order and which after. By extrapolation, we know that those incurred through the March 5 billing totalled $49,-681.76. Deducting the $12,543.67 disallowed as occurring before the appointment of the Independent Counsel, leaves as eligible for consideration for award $37,138.09. From that figure we subtract $11.36 shown for conferences on the January 8, 1987 bill; $22.72 shown as miscellaneous on that same bill; and $24.30 for conferences shown on the March 5 bill. This leaves $37,075.71.

To this we must add the eligible portion of the April 2 bill. That billing reflected $12,-037.50 in new services rendered and disbursements of $674.01 for a total new billing of $12,711.51. From this we deduct $33.48 for conferences; $32.96 for miscellaneous; leaving a possible total of $12,645.27. However, only a small portion of this is eligible as rendered before the entry of the immunity order on March 6. As noted above, we cannot ascertain precisely what part is incurred on what dates. The computer printout submitted with the statement is largely illegible and not helpful in this resolution. While it would be possible to say that petitioner bears the burden of establishing reasonableness and that he has done so as to none of the billing, this seems to us unduly harsh. We have therefore allocated eligible and ineligible amounts on a pro rata basis.

During the month of March 1987, the period of the bill under discussion, there were 22 business days. Five of these are eligible days, that is March 2nd through March 6th, constituting 22.7 percent of the business month. We therefore allowed 22.7 percent of $12,645.07 or $2,870.43 for the April 2 billing.

Adding this sum to the $37,075.71 previously determined, yields a total eligible reimbursement of $39,946.14.

By judgment of even date herewith, we award that amount to Robert C. Dutton.