309 F.3d 18
 In re: Alexis M. HERMAN (Hutt Fee Application).
 Division No. 98-2.
 United States Court of Appeals, District of Columbia Circuit.
 Filed October 29, 2002.
 
 Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, As Amended.
 Before: SENTELLE, Presiding, FAY and CUDAHY, Senior Circuit Judges.
 Opinion of the Special Court filed PER CURIAM.
 
 ORDER
 PER CURIAM:
 
 1
 This matter coming to be heard and being heard before the Special Division of the Court upon the petition of Louis Hutt for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 et seq. (1994), and it appearing to the court that the application is allowable only to the extent reflected in the opinion issued contemporaneously herewith, it is hereby ORDERED, ADJUDGED, and DECREED that the United States reimburse Louis Hutt for attorneys' fees and expenses that he incurred during the investigation by Independent Counsel Ralph I. Lancaster in the amount of $1,447.
 
 ON APPLICATION FOR ATTORNEYS' FEES
 
 2
 Louis Hutt petitions this court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. §§ 591-599 (1994) (the "Act"), for reimbursement of attorneys' fees in the amount of $60,675.63 that he incurred during and as a result of the investigation conducted by Independent Counsel ("IC" or "OIC") Ralph I. Lancaster, Jr. Because we conclude that Hutt has not carried his burden of showing that the fees would not have been incurred but for the requirements of the Act, we deny the petition except for those fees incurred for review and response to the IC's final report.
 
 BACKGROUND
 
 3
 In 1997 the U.S. Department of Justice ("DOJ") received information that then-Secretary of Labor Alexis M. Herman, while she was Special Assistant to the President in 1996, had engaged in possible illegal activity. Specifically, in 1994 Vanessa J. Weaver, a close friend of Herman's, formed a partnership, International Investment for Business Development ("IIBD"), with Laurent J. Yene. In 1996 Singaporean Businessman Abdul Rahman entered into a retainer agreement with IIBD to promote a business of his in Africa. Weaver and Yene's partnership apparently ended soon thereafter, at which point Yene began making allegations of criminal conduct on the part of Weaver and Herman. In particular, Yene claimed that Herman, while Special Assistant to the President, had agreed to facilitate business for IIBD and another company co-owned by Weaver in exchange for a percentage of the profits made by the companies as a result of Herman's efforts. Additionally, Yene claimed that Herman improperly directed Weaver to solicit campaign contributions for the Democratic National Committee from clients of IIBD, including Abdul Rahman.
 
 
 4
 Thereafter, the Attorney General (hereinafter referred to as "AG" or "DOJ"), pursuant to section 592(a) of the Act, conducted a preliminary investigation to determine whether further investigation was warranted into whether Herman accepted the illegal payments or directed the solicitation of the illegal campaign contributions. On May 11, 1998, at the conclusion of the preliminary investigation, the AG, having determined that further investigation was warranted, submitted her application to us for the appointment of an independent counsel to look into the matter (hereinafter referred to as "Application").
 
 
 5
 On May 26, 1998, we appointed Ralph I. Lancaster, Jr. as independent counsel to further investigate the allegations. The investigation lasted almost two years and included numerous interviews, extensive document review, and substantial grand jury activity. Weaver's finances and those of her companies were looked into. In particular for our purposes here, IC Lancaster discovered that in 1993, after Herman had joined the White House staff, Weaver paid her $54,000 for all of the shares of her consulting business, A.M. Herman & Associates, Inc. ("A.M. Herman"). Evidence was produced that in 1993 and 1994 Weaver sought to evade federal and state income taxes concerning her purchase of A.M. Herman, and that this tax evasion scheme also involved Herman's accountant, Louis Hutt, the fee applicant here. Ultimately, no charges were brought against either Weaver, Herman, or Hutt. Abdul Rahman, however, was indicted on multiple counts of making illegal campaign contributions.
 
 
 6
 Hutt, pursuant to section 593(f)(1) of the Act, has petitioned this court for reimbursement of the attorneys' fees that he incurred during the IC's investigation. As directed by section 593(f)(2) of the Act, we forwarded copies of Hutt's fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.
 
 ANALYSIS
 The Independent Counsel statute provides:
 
 7
 Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.
 
 
 8
 28 U.S.C. § 593(f)(1). Accordingly, in order to obtain an attorneys' fees award under the statute, a petitioner must show that all of the following requirements are met: 1) the petitioner is a "subject" of the investigation; 2) the fees were incurred "during" the investigation; 3) the fees would not have been incurred "but for" the requirements of the Act; and, 4) the fees are "reasonable." See In re North (Dutton Fee Application), 11 F.3d 1075, 1077-82 (D.C.Cir., Spec.Div., 1993) (per curiam). The petitioner "bears the burden of establishing all elements of his entitlement." In re North (Reagan Fee Application), 94 F.3d 685, 690 (D.C.Cir., Spec.Div., 1996) (per curiam). There appears to be little dispute that Hutt's fees were incurred during the investigation and that they are reasonable. And although there appears to be some dispute as to when Hutt's "subject" status ended, we nevertheless need only limit our discussion to the third requirement, known as the "but for" test.
 
 
 9
 * * * * * * *
 
 
 10
 We have previously held that "[a]ll requests for attorneys' fees under the Act must satisfy the `but for' requirement." In re Sealed Case, 890 F.2d 451, 452 (D.C.Cir., Spec.Div., 1989) (per curiam). And we have repeatedly observed that "[t]he most difficult element for a fee applicant to establish under the Act is that the fees `would not have been incurred but for the requirements of [the Act].'" In re North (Bush Fee Application), 59 F.3d 184, 188 (D.C.Cir., Spec.Div., 1995) (per curiam) (quoting Dutton, 11 F.3d at 1079). In order to establish eligibility for an award, the fee applicant must show that the amounts claimed are only those fees and expenses above and beyond those she would have incurred as a result of an investigation by the DOJ. In re Sealed Case, 890 F.2d at 452-53. As we stated in In Re Pierce (Olivas Fee Application), 178 F.3d 1350 (D.C.Cir., Spec.Div., 1999) (per curiam), "[i]f the investigative act generating the defensive costs would, in the absence of the Act, have been pursued by other authorities — `had the case been handled by the Department of Justice or other executive authorities rather than the Independent Counsel' — then Congress did not contemplate the award of counsel fees." Id. at 1355 (quoting Dutton, 11 F.3d at 1080).
 
 
 11
 Hutt argues that he satisfies the "but for" requirement under two separate theories.
 
 
 12
 Case could have been disposed of at an early stage. Hutt argues that "but for" the requirements of the Act, the case could have been disposed of at an early stage of the investigation, without subjecting him to the incurrence of attorneys' fees. He claims that "two different restrictions in the Act forced the Attorney General to unnecessarily appoint an Independent Counsel." First, he asserts that because of the Act's limitations, "the Attorney General was unable to develop the evidence necessary to judge whether further investigation was warranted," and that "[u]ltimately, the Act limited the Attorney General's ability to dispose of the charges quickly." Hutt contends that "[i]f the Herman investigation centering on Mr. Yene's allegations of influence peddling and illegal campaign contributions ... had been resolved by the Attorney General without resort to an IC, then Mr. Hutt would never [have] been forced to incur the legal fees at issue here."
 
 
 13
 Second, he argues that "the statutory time limits on the investigation hampered the Attorney General from resolving the issue without resort to an independent counsel." He notes that the Attorney General's preliminary investigation took 90 days plus a 60 day extension and that the Attorney General "was still pressed for time." Hutt asserts that if the AG had not been restricted by the Act and had had more time to investigate the allegations, then the case would have been brought quickly to a close with little or no investigation of him.
 
 
 14
 But for these two restrictions, Hutt claims, "which limited the investigative tools and timeframe for the Justice Department investigation, the OIC investigation would never have occurred, and Mr. Hutt would not have incurred any legal fees." Hutt implies that an unfettered preliminary investigation by the DOJ would have uncovered no reason for any further investigation, and the case would have been promptly terminated. We cannot agree. Instead, we concur with the IC that in the absence of the Act, "any investigation conducted by the Attorney General would necessarily have had to have followed the same leads — identified by Public Integrity in the preliminary investigation — that formed the starting point for the Independent Counsel's investigation," and that such an investigation would have just as thoroughly investigated not only Herman, but also Weaver and therefore Hutt.
 
 
 15
 Investigated where private citizens would not have been. Hutt further contends that he satisfies the "but for" requirement because he "was clearly subjected to a more rigorous application of the criminal law than he would have been if the investigation had been pursued by officials other than the OIC." This is so, he claims, "because of the expanded scope of the OIC investigation. It is extremely unlikely that a professional prosecutor investigating Secretary Herman and Mr. Hutt's client Vanessa Weaver for transactions involving IIBD ... would have subpoenaed and scrutinized tax records stretching back to 1993 and involving Weaver entities other than IIBD." For authority, Hutt relies on In re Sealed Case, in which we held that the "but for" requirement was satisfied because the petitioner's tax returns were examined for a period of nine years and "the ordinary examination of a taxpayer for [such a] violation would have been substantially less probing." 890 F.2d at 454. In her fee petition Vanessa Weaver also cited to In re Sealed Case while making essentially this same argument; as we noted there, however, "[i]t does not appear that any such less probing examination would have been made of Weaver's conduct in the absence of the Act," because the Department of Justice would have thoroughly investigated such serious allegations concerning the business dealings of a senior White House official (Herman) and her business partner and friend (Weaver). In re Herman (Weaver Fee Application), 301 F.3d 648 (D.C.Cir., Spec. Div., 2002) (per curiam).
 
 
 16
 Hutt nevertheless takes his argument one step further, claiming that he "was far removed from the principal focus of the investigation" and therefore "[i]t is highly unlikely that a prosecutor would target such a marginal party for transactions involving relatively small monetary amounts...." We disagree. As the IC points out, the accounting records concerning the $54,000 payment "raised serious questions as to whether Weaver, with Hutt's assistance, had perpetrated a tax sham in order to lessen the financial impact of this transaction," and any investigation by the DOJ would have uncovered this evidence, and it would have been thoroughly looked into, just as was done by the Independent Counsel.
 
 
 17
 * * * * * * *
 
 
 18
 In sum, we agree with both the Independent Counsel and the Department of Justice that if there had there been no Independent Counsel Act, the Attorney General would have thoroughly investigated the allegations against Herman, leading in turn to an investigation of Weaver and Hutt similar to that conducted by the IC. Hutt therefore has not satisfied the "but for" requirement under either of the theories that he relies upon because he "was not subjected to an investigation that he would not have been subjected to in the absence of the Act." In re Nofziger, 925 F.2d 428, 446 (D.C.Cir., Spec.Div., 1991) (per curiam).
 
 
 19
 But although Hutt was not investigated by the IC differently than he would have been otherwise, in the absence of the Act he would not have incurred fees for review and response to the IC's final report. Section 594 of the Act requires that the independent counsel "file a final report with the division of the court, setting forth fully and completely a description of the work of the independent counsel...." 28 U.S.C. § 594(h)(1)(B). Absent the Act, federal "prosecutors do not issue reports." In re North, 16 F.3d 1234, 1238 (D.C.Cir., Spec.Div., 1994). Indeed, as we have observed before, "[t]he filing of reports by Independent Counsels is `a complete departure from the authority of a United States Attorney' and is `contrary to the practice in federal grand jury investigations.'" Id. (quoting In re Sealed Motion, 880 F.2d 1367, 1369-70 (D.C.Cir., Spec. Div., 1989) (per curiam)). Therefore, we hold that the amount of $1,447 in reasonable attorneys' fees that Hutt incurred for reviewing and responding to the IC's final report is reimbursable.
 
 CONCLUSION
 
 20
 For the reasons set forth above, we allow in part the petition of Louis Hutt to the extent of ordering reimbursement for attorneys' fees in the amount of $1,447. We deny the balance of the petition as not meeting the "but for" requirement of the Act, 28 U.S.C. § 593(f)(1).