Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Filed September 30, 2003

————

Division No.   94-1

In Re: Madison Guaranty Savings & Loan
(Jordan Fee Application)

————

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

————

Before: Sentelle, *Presiding*, Fay and Reavley, *Senior Circuit Judges.*

## O R D E R

This matter coming to be heard and being heard before the Special Division of the Court upon the application of Vernon A. Jordan, Jr. for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (2000), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith, that the petition is not well taken, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the petition of Vernon A. Jordan, Jr. for attorneys' fees that he

incurred during the Independent Counsel's investigation be denied, save for a single unique item.

> *Per Curiam*
> For the Court:
> Mark J. Langer, Clerk

> By:

> Marilyn R. Sargent
> Chief Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed September 30, 2003

Division No. 94-1

In Re: Madison Guaranty Savings & Loan
(Jordan Fee Application)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before: Sentelle, *Presiding*, Fay and Reavley, *Senior
Circuit Judges.*

## ON APPLICATION FOR ATTORNEYS' FEES

Opinion of the Special Court filed *Per Curiam.*

Separate opinion specially concurring in the judgment filed by *Senior Circuit Judge* Reavley.

*Per Curiam*: Vernon A. Jordan, Jr., petitions this Court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. §§ 591–599 (2000) (the Act), for reimbursement of attorneys' fees in the amount of $302,719.82, inclusive of $16,111.30 in expenses allegedly incurred by him in connection with the investigation conducted by the Independent Counsel of Jordan's alleged involvement in perjury and subornation of perjury. Because we conclude that Jordan has not carried his burden of showing that the fees would

not have been incurred but for the requirements of the Act, we deny the petition, save for a single unique item.

## I.  BACKGROUND

In August 1994, upon the petition of then-Attorney General Janet Reno, this Court appointed an Independent Counsel to continue the investigation of the Madison Guaranty Savings and Loan Association theretofore conducted by Reno appointee regulatory Independent Counsel Robert B. Fisk, Jr.  On January 16, 1998, again upon the application of Attorney General Reno, this Court ordered the Independent Counsel's jurisdiction expanded to include an investigation as to whether Monica Lewinsky or others had suborned perjury, obstructed justice, intimidated witnesses or otherwise violated federal laws in dealing with witnesses or potential witnesses in connection with the civil law suit filed by Paula Jones against William Jefferson Clinton.  In the early stages of that investigation, Lewinsky declined to cooperate with the Office of Independent Counsel (OIC) although she subsequently provided substantial evidence of the involvement of then-President Clinton in the alleged violations of law.  Because the allegations of perjury and obstruction proceeded from evidence that Clinton had presented false testimony under oath concerning his relationship with Lewinsky, and because the OIC had evidence that Clinton may have attempted to influence Lewinsky and others to perjure themselves in support of his own perjury, the OIC conducted extensive investigation into the relationship between the President and Lewinsky prior to obtaining her cooperation.

In the course of that investigation, the OIC obtained evidence that Jordan, a prominent attorney in Washington, DC, and friend of President Clinton, who was well connected with many private corporations, assisted Lewinsky in her efforts to find a job outside the Clinton administration.  Jordan also arranged for Lewinsky to be represented by another prominent Washington attorney in connection with her subpoena in the Jones case.  The OIC also uncovered evidence that in January of 1998, Lewinsky accepted a job offer from Revlon;

that Jordan assisted her in obtaining that job offer; and that Jordan may have assisted Lewinsky in obtaining the job as a result of Lewinsky's willingness to perjure herself regarding the true nature of her relationship with President Clinton and in support of Clinton's own perjured testimony. The OIC therefore deemed it critical to determine if Jordan had offered Lewinsky assistance in exchange for her perjured testimony.

Ultimately, although the Independent Counsel obtained no indictments arising out of the *Jones v. Clinton* obstruction of justice and perjury investigation, the President was impeached, as well as held in contempt by the judge in the *Jones* litigation. Further, the Independent Counsel entered into a bargain with the President whereunder the President admitted wrongdoing; accepted other non-criminal sanctions; and the Independent Counsel filed a final report. That final report expressed the conclusion "that sufficient evidence existed to prosecute [President Clinton] and that such evidence would 'probably be sufficient to obtain and sustain a conviction . . . by an unbiased trier of fact.'" Final Report at 41 (quoting United States Attorneys Manual Title 9–27.001–9–27.050).

In response to the investigation of his alleged connection with the perjury and obstruction of justice, Jordan retained legal counsel. He now petitions for the fees incurred in that representation.

## II. ANALYSIS

As we have had frequent occasion to note before, the Ethics in Government Act, unique in the criminal law structure of the United States, provides for reimbursement of attorneys' fees expended by subjects in defense against an investigation under the Act. Specifically, 28 U.S.C. § 593(1) provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant

to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

As we have in the past, we note that because this attorneys' fee provision "constitutes a waiver of sovereign immunity it is to be strictly construed." *In Re: Nofziger*, 925 F.2d 428, 438 (D.C. Cir., Spec. Div., 1991) (per curiam). Therefore, we are authorized to award attorney fees only where petitioner has established the following elements:

(1) he is a "subject" of such investigation;

(2) the fees were incurred "during" the investigation;

(3) the fees would not have been incurred "but for" the requirements of the Act; and

(4) the fees are "reasonable."

*In Re: North (Reagan Fee Application)*, 94 F.3d 685, 687 (D.C. Cir., Spec. Div., 1996) (citing *In Re: North (Cave Fee Application)*, 57 F.3d 1117, 1119 (D.C. Cir., Spec. Div., 1995)).

Jordan easily meets the first two requirements of the Act. Although the Act does not define "subject" we have held repeatedly that a "subject is one who, at the time of incurring the fees involved in the application knew that his conduct was within the scope [of the investigation] in such a fashion that the independent counsel might reasonably be expected to point the finger of accusation at him." *In Re: North (Schultz Fee Application),* 8 F.3d 847, 850 (D.C. Cir., Spec. Div., 1993) (per curiam). Jordan knew early in the investigation that the Independent Counsel was in possession of audio tapes of conversations between Lewinsky and another witness in which Lewinsky attempted to suborn the perjury of the other witness. Jordan also was aware that the independent counsel had obtained evidence that Lewinsky had discussed her subpoena in *Jones v. Clinton* with President Clinton and Jordan and that Jordan was helping Lewinsky find employment. Furthermore, the Office of the Independent Counsel itself confirmed Jordan's status as a subject of the investigation

with Jordan's counsel before Jordan appeared at the Grand Jury convened for the Lewinsky investigation.

As to the "during" element, there is no contention that Jordan seeks fees incurred outside the period of investigation. However, like most fee applicants under the Act, petitioner has not been able to establish that the fees "would not have been incurred but for the requirements of [the Ethics in Government Act]." *See, e.g., In re: Pierce (Kisner Fee Application)*, 178 F.3d 1356, 1358–62 (D.C. Cir., Spec. Div., 1999). As we have frequently stated, "the most difficult element for a fee applicant to establish under the Act is that the fees 'would not have been incurred but for the requirements of [the Act].'" *In Re: North (Bush Fee Application)*, 59 F.3d 184, 188 (D.C. Cir., Spec. Div., 1995) (per curiam) (quoting *In Re: North (Dutton Fee Application)*, 11 F.3d 1075, 1079 (D.C. Cir., Spec. Div., 1996) (per curiam)). This is true in part because the "but for" test requires a petitioner to prove a negative and a negative is fraught with speculation. In large part, however, the establishment of this element is difficult because the law contemplates that it should be difficult; that is, that such fees will not be a common thing. *See, e.g., In Re: Olson*, 884 F.2d 1415, 1420 (D.C. Cir., Spec. Div., 1989) (per curiam) ("The Court is admonished to award reimbursement for attorneys' fees 'in only rare instances' for 'extraordinary expenses,' 'sparingly'") (quoting S. Rep. No. 97–496, 97th Cong., 2nd Sess. 19 (1982)). Thus we have held repeatedly that "the contemplation of the legislation is not that subjects of independent counsel investigation will be reimbursed for all legal fees, but only . . . for those legal fees that would not have been incurred by a similarly situated subject investigated in the actions of the Act." *In re: Madison Guaranty Savings & Loan (Clinton Fee Application)*, 334 F.3d 1119 (D.C. Cir., Spec. Div., 2003) (per curiam).

We have in the past listed four nonexhaustive circumstances sufficient to qualify for attorney fees award in the face of the "but for" requirement:

> 1. When the independent counsel's investigation substantially constituted duplication of the preliminary in-

vestigation conducted by the Department of Justice. *In re Olson*, 884 F.3d 1415, 1420 (D.C. Cir., Spec. Div., 1989) (per curiam); *In re North (Dutton Fee Application)*, 11 F.3d at 1080.

2. When the petitioning subject has been "prejudiced by the Department of Justice's failure to comply with the substantial protective features of the Act." *In re Nofziger*, 925 F.3d at 438 (citing *In re Meese*, 907 F.3d 1192 (D.C. Cir., Spec. Div., 1990) (per curiam)).

3. When in the absence of the requirements of the Act "the case could have been disposed of at an early stage of the investigation," without subjecting the petitioning subject to the conditions that led to his incurring the fees sought. *In re Segal (Sagawa Fee Application)*, 151 F.3d 1085, 1089 (D.C. Cir., Spec. Div., 1998) (per curiam) (quoting *In re Nofziger*, 925 F.2d at 438).

4. Not wholly distinct from no. 3, *supra*, when "high public officials [or derivative subjects] were investigated under the Act in circumstances where private citizens would not [have been] investigated." *In re Nofziger*, 935 F.2d at 442; *In re North (Dutton Fee Application)*, 11 F.3d at 1080.

*In re Pierce*, 190 F.3d 586, 592 (D.C. Cir., Spec. Div., 1999) (per curiam) (citations omitted).

Jordan's application does not satisfy any of the four existing categories nor suggests any new or unique reason why his case constitutes one of those rare instances in which we should award counsel fees. Jordan contends that his case falls within the related exceptions numbered 3 and 4 above arguing that "the investigation into the allegations concerning Mr. Jordan would have been quickly disposed of but for the requirements of the Act and had Mr. Jordan not been a prominent Washington attorney and a personal friend of President Clinton." Jordan then cites and relies on *Dutton, supra*, and *In re Donovan (Donovan Fee Application)*, 877 F.2d 982, 990 (D.C. Cir., Spec. Div., 1989) (per curiam). However, what Jordan neglects is that in both *Donovan* and *Dutton* we were dealing with the question of the status of the

subject and the intensity and length of the investigation in terms of whether or not that status influenced an independent counsel to conduct an investigation that would not have been conducted *but for the Act* and whether *the requirements of the Act* caused an increase in the length or intensity of the investigation. Jordan's argument not only does not fit within those precedents, it distinguishes those on its face.

Jordan cites his no doubt accurate claim to be a prominent Washington attorney and a friend of the President as the reason for the intensity of the investigation, but other than a conclusory statement, he offers no fashion in which the Act was a "but for" cause of all or part of the investigation generating the attorney fees for which he now seeks reimbursement. In the *Donovan* case, the Deputy Attorney General, by his own testimony, had "found himself unable to comply 'with the written or other established policies of the Department of Justice with respect to [regular] enforcement of criminal laws' against citizens who were not high level government officials." 877 F.2d at 990. With one finite exception which will be discussed *infra*, nothing in Jordan's application or the supporting documentation supports the proposition that the investigation of Jordan was any longer or more intense than it would have been in the absence of the requirements of the Act.

The Attorney General when she made the referral, and the Independent Counsel when he conducted the investigation, had credible, indeed compelling, evidence that Monica Lewinsky had committed perjury and was attempting to suborn perjury of others. This was accompanied by other evidence that the President of the United States had committed perjury and had suborned or attempted to suborn others. Evidence developed from this evidence established that Jordan, a friend of the President, had undertaken extensive efforts to benefit Lewinsky, the apparent perjurer and suborner of others. Jordan offers no reason why any prosecutor in the absence of the Act would not have investigated these serious allegations of criminal wrongdoing as thoroughly as did the Independent Counsel. Rather than fall within the precedent of *Donovan*, Jordan's claim parallels those rejected in such

prior decisions as *In re Pierce (Olivas Fee Application)*, 178 F.3d 1350 (D.C. Cir., Spec. Div., 1999) (per curiam). In *Olivas*, and numerous similar cases, we rejected claims paralleling those of Jordan stating that "we cannot hold that the Attorney General and other investigative authorities would not have pursued allegations of corruption as deep and wide spread as those revealed by the Independent Counsel's investigation had there been no such Act." *Id.* at 1355. Similarly here, we cannot hold that the Attorney General, U.S. Attorneys, and other investigative authorities would not have pursued the credible allegations of perjury and subornation in absence of the Act. Nor can we say that a professional or politically appointed prosecutor would not have investigated the implications of an extensive effort by a friend of President Clinton's to secure employment for the person who had perjured herself on his behalf and sought to suborn others to do so. The *Dutton* precedent is even further removed. In that case, the conduct under investigation by the Independent Counsel was so marginally criminal that we held, as we did in several parallel cases, that "but for" the requirements of the Act, no criminal investigation would have been conducted at all. *See also In re Segal (Segal Fee Application)*, 145 F.3d 1348, 1350 (D.C. Cir., Spec. Div., 1998).

We note that Jordan petitions for $1,215.00 or 2.7 hours for review of the Independent Counsel's final report. As we have noted in many other cases, § 594 of the Act imposes the requirement that the Independent Counsel "file a final report with the Division of the Court, setting forth fully and completely the description of the work of the Independent Counsel...." 28 U.S.C. § 594(h)(1)(B). Outside the requirements of the Act, federal "prosecutors do not issue reports." *In re North*, 16 F.3d 1234, 1238 (D.C. Cir., Spec. Div., 1994). "Indeed ... the filing of reports by Independent Counsels is a complete departure from the authority of a United States Attorney and is contrary to the practice in federal Grand Jury investigations." *In re Madison Guaranty Savings & Loan (Clinton Fee Application)*, 334 F.3d 1119, 1127 (D.C. Cir., Spec. Div., 2003) (per curiam) (internal quotation marks and citations omitted). Therefore, we do hold that this is a

fee which would not have been incurred but for the requirement of the Act. Because it appears reasonable, we will award recovery in the amount of $1,215.00.

## CONCLUSION

For the reasons set forth above, we allow the petition for fees of Vernon A. Jordan, Jr., only to the extent of $1,215.00. Except as herein specifically allowed, the petition is denied.

1

REAVLEY, *Senior Circuit Judge, specially concurring*:

Because of Ms. Lewinsky's statements and conduct, an investigation of Mr. Jordan was warranted. The extensiveness of that investigation (five grand jury appearances, for example) may well have necessitated more legal expense than would have been required had there been no Independent Counsel conducting the investigation. The problem, as the court explains, is that Mr. Jordan is required to distinguish his costs due solely to the extensiveness of the Independent Counsel's investigation. This is his burden and he makes no attempt to carry it — most likely an impossibility. There being no reasonable basis for ruling other than the court does, I concur.