**In re Oliver L. North (Shultz Fee Application).**

**Division No. 86–6.**

United States Court of Appeals, District of Columbia Circuit.

(Division for the Purpose of Appointing Independent Counsel, Ethics in Government Act of 1978, as Amended).

Dec. 7, 1993.

Before: SENTELLE, Presiding, BUTZNER and SNEED, Senior Circuit Judges.

---

### ORDER

PER CURIAM.

This matter coming on to be heard and being heard before the Special Division of the Court, upon the application of George P. Shultz for reimbursement of attorneys' fees pursuant to § 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1988), and it appearing to the Court for the reasons more fully set forth in the opinion filed contemporaneously herewith, that the motion is well taken, in part, it is hereby

ORDERED, ADJUDGED and DE-CREED that the United States reimburse George P. Shultz for attorneys' fees he incurred during the investigation of Independent Counsel Lawrence E. Walsh in the amount of $281,397.69 this 7th day of December, 1993.

Before: SENTELLE, Presiding, BUTZNER and SNEED, Senior Circuit Judges.

Opinion for the Special Division filed PER CURIAM.

PER CURIAM:

George P. Shultz, Secretary of State of the United States from 1981 to 1989, seeks reimbursement under § 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1988) ("the Act") for attorneys' fees incurred by him during 1992 as a result of the Iran/Contra investigation conducted by Independent Counsel Lawrence E. Walsh. Under the applicable statute, Shultz is entitled to reimbursement if he satisfies the provisions of 28 U.S.C. § 593(f)(1), which allow reimbursement to "an individual who is the subject of an investigation conducted by an independent counsel pursuant to [the Act] . . . if no indictment is brought against such individual pursuant to that investigation" where "reasonable attorneys' fees [were] incurred . . . during that investigation which would not have been incurred but for the requirements of [the Act]." Shultz seeks $286,795.51 in attorneys' fees and expenses, which he claims fall within those provisions. Upon examination of the petition and supporting authority, exhibits, and memoranda, we find that he is in large part correct and therefore allow the greater portion of the fees prayed.

## I. Background

We will not rehash in detail the much storied Walsh investigation. We note that it commenced with the application of then Attorney General Edwin Meese on December 4, 1986, requesting that the Division appoint an independent counsel "to investigate and, if warranted, to prosecute alleged violations of federal criminal laws by Lt. Col. Oliver L. North, other United States Government Officials, or other individuals acting in concert with [them] . . . in connection with the sale or shipment of military arms to Iran and the transfer or diversion of funds realized in connection with such sale or shipment." On December 19, 1986, the Division appointed Walsh as Independent Counsel to conduct an investigation. As of the writing of this opinion, that independent counsel's office has not yet been terminated, but appears to be approaching an end. It is neither necessary nor possible to cover all details of the multi-faceted investigation and the numerous prosecutions conducted by Walsh. However, many reported cases already supply some legal history. *See, e.g., In re North (Dutton Fee Application),* No. 86–6, 1993 WL 489818 (D.C.Cir. Nov. 30, 1993) ("*Dutton*"); *United States v. Poindexter,* 951 F.2d 369 (D.C.Cir. 1991); *United States v. North,* 910 F.2d 843 (D.C.Cir.1990); *United States v. Poindexter,* 859 F.2d 216 (D.C.Cir.1988). For purposes of this opinion, we note that Attorney General Meese began a preliminary investigation of the events in question (the so-called "Iran/Contra Affair") on November 21, 1986. On November 22, 1986, Shultz was interviewed by the Attorney General. He also took other steps to assist in the Attorney General's investigation. At the close of the preliminary investigation, the Attorney General made the application referenced above. Over the next few years, Shultz was interviewed by the Independent Counsel or his staff attorneys four times. He also appeared before congressional committees and supplied information to various investigating entities.

On December 17, 1991, Deputy Independent Counsel Craig Gillen informed Shultz by letter that the Independent Counsel had acquired "new information from cooperating individuals and documentary sources" and desired to interview him a fifth time. Gillen also requested access to all of petitioner's notes and dictated material from his tenure as Secretary still within his custody or control. Shultz called Gillen to inquire about the letter and was informed that his status had changed from "witness" to "subject." Early the next month, Shultz retained Lloyd Cutler of the law firm of Wilmer, Cutler & Pickering to represent him in his defense against the investigation. The billings of attorney Cutler and his law firm for that representation form the foundation of the present petition.

In reviewing the petition and reaching our conclusions in disposition of it, we are, as we have been in other similar cases, grateful to

the Attorney General for the assistance of the Department of Justice. Although not informed of the premises of the investigation by reason of the statutory independence of the Independent Counsel, the Justice Department has nonetheless at the request of the Division offered useful advice on matters not requiring factual familiarity with the investigation. *See Dutton,* slip op. at 2.

## II. Analysis

From the plain words of the statute, petitioner must demonstrate that the fees for which he seeks reimbursement were incurred while he was a "subject of an investigation by an independent counsel," that the fees "would not have been incurred but for the requirements of" the Act, and that the fees are reasonable. 28 U.S.C. § 593(f)(1). *See also Dutton,* slip op. at 2, 6, 9 (collecting the cases).[1] We consider these three requirements in turn.

### A. Subject

■ As we have recently noted, the Act "does not define 'subject.'" *Dutton,* slip op. at 2. However, we have defined that term for purposes of the fee reimbursement provision as "a person whose conduct is within the scope of the [independent counsel's] investigation." *Id.* More specifically, the subject is one who, at the time of incurring the fees involved in the application, knew that his conduct was within that scope in such a fashion that "the independent counsel might reasonably be expected to point the finger of accusation" at him. *Id.* at 4. In a sense, a "subject" for our purposes is the equivalent of a potential defendant, though we do not mean to suggest that the two terms are precisely synonymous. Under any definition of "subject," Shultz meets the criterion about as squarely as anyone ever could. The Independent Counsel's office directly told him that he was a "subject." Then, and only then, did he retain the counsel whose fees are now the subject of this petition.

■ The Department of Justice, not having access to the full report of the Independent Counsel, suggests that this status of subject might have lapsed at one of two possible points in time. First, based on Shultz's own memorandum in support of his petition, the Department suggests that Secretary Shultz could not be considered a subject past September 17, 1992, when the Independent Counsel stated that no further indictments would be sought. Based on our more complete knowledge of the investigation, we cannot concur in the Department's suggestion. In making this determination, we consider three factors.

First, the Independent Counsel's September 17 statement was expressly qualified: that is, he intended not to refer further matters to the Grand Jury "in the absence of some new developments." We take this fact in conjunction with the second factor: that is, the Independent Counsel obtained indictments at least as late as October 30, 1992, and as late as June 16, 1992, obtained an indictment covering events occurring as late as October 10, 1990. Thus, the possibility of "new developments" cannot be considered sufficiently remote to defeat the objective reasonableness of a determination by Shultz and his counsel that there remained a realistic possibility that the scope of the investigation encompassed his conduct in such a fashion as to make him a potential defendant. Therefore, the statement by the Independent Counsel cannot deprive Shultz of the status of "subject." The third factor, and perhaps the most compelling one, is that Shultz's counsel had requested from the Independent Counsel clarification of his status up until the date of the filing of the current petition for fees, and the Independent Counsel had until that date not retreated from the proposition that Shultz remained a subject.

■ The Department of Justice also suggests that the expiration of a statute of limitations in July 1992 applicable to petitioner's congressional testimony in 1987 may have terminated his status as "subject." Given

---

1. Other requirements under the statute, such as the requirement that the fees be expended "during that investigation," *see In re Nofziger,* 938 F.2d 1397, 1403 (D.C.Cir.1991), and that the petitioner not have been indicted, *see id.* at 1399–1400, are not only unquestioned either by the Department of Justice or anyone else but are so plainly met that they warrant no discussion.

the three factors set forth above, we do not agree.

In short, Shultz remained a subject for the entire period of time during which he incurred the fees.

### B. The "But For" Requirement

■ We have recently reaffirmed our precedents construing the "but for" requirement of the Act. *See Dutton,* slip op. at 6–8. *See also In re Sealed Case,* 890 F.2d 451, 452 (D.C.Cir.1989). As we noted in *Dutton,* "[t]he purpose in the award of reimbursement for fees that would not have been incurred 'but for' the Act is to ensure that 'officials [and here derivative 'subjects'] who are investigated by independent counsels will be subject only to paying those attorneys' fees that would normally be paid by private citizens being investigated for the same offense by' federal executive components such as the United States Attorney." *Dutton,* slip op. at 6–7. Although this is not always an easy determination to make, in this case we conclude that Shultz meets the criteria.

In *Dutton,* we canvassed the various circumstances which we had found sufficient to meet the "but for" requirement in prior cases. *Id.* at 6–8 (citing *In re Donovan,* 877 F.2d 982, 989 (D.C.Cir.1989); *In re Olson,* 884 F.2d 1415, 1420–22 (D.C.Cir.1989); *In re Sealed Case,* 890 F.2d at 454). In *Dutton,* we held that the petitioner had met the requirement by showing that his exposure as a subject was due to a criminal investigation of events allegedly constituting a conspiracy to circumvent the Boland Amendments—actions that an appointed Attorney General would normally not have treated as having criminal consequences. *Dutton,* slip op. at 8. As it was the appointment of the Independent Counsel that caused the atypical criminal treatment of Dutton's conduct, we concluded that he was eligible for the fee award. Thus so with Shultz.

In the first place, much of this investigation also involved circumvention of the Boland Amendments, although the conduct of Shultz was not limited to that side of the investigation in the way that the conduct of the petitioner in *Dutton* was. Shultz, however, is also able to show that the Attorney General did in fact conduct an investigation of the events involving his conduct and did not recommend any criminal action or investigation against him. Furthermore, in the experience of the Court, it is not reasonable to expect that a professional prosecutor, as opposed to an independent counsel under the Act, would have been making subjects out of persons theretofore treated as witnesses four and one-half years after the commencement of an investigation, absent some circumstance far more extraordinary than any displayed to us here. Therefore, we conclude that Shultz has met the "but for" requirement of the Act.

### C. Reasonableness

■ All that remains is a determination of the reasonableness of the fees prayed. The Department of Justice, while not frontally challenging the "reasonableness" of the fees, does note that "the fee application reveals that the rates charged by Shultz's counsel are extraordinarily high," referring particularly to the $370.00 per hour rate charged by Lloyd Cutler and the $310.00 per hour rate charged by his partner Howard Willens. We share the concern of the Department that attorneys' fees in this range will not appear reasonable to most of the taxpayers who ultimately bear the burden of this award. However, the reasonableness required by the Act is not a reasonableness such as would exist in a theoretical rational economy, but reasonableness in light of the legal economy that in fact exists.

We have in the past exercised our discretion to award fees at similar rates in other cases involving high government officials. For example, in *In re Meese,* 907 F.2d 1192, 1202 (D.C.Cir.1990), we approved a rate of $300.00 per hour for representation of a sitting Attorney General. In *In re Donovan,* 877 F.2d at 993, we approved $350.00 per hour for the representation of a former Secretary of Labor. We further note that the services rendered in *Meese* dated back to 1987, and in *Donovan* to 1985, and that to the best of our knowledge, legal fees did not decline between those years and 1991–92, when petitioner engaged the services of

Messrs. Cutler and Willens. Though the Act provides no particular guidance for our determination of standards of reasonableness, the House Conference Report suggests that "in determining the proper rate, the special court should consider the prevailing community standards and any helpful case law." H.R.CONF.REP. No. 452, 100th Cong., 1st Sess. 31 (1977), *reprinted in* 1987 U.S.C.C.A.N. 2197. Shultz has provided us with convincing affidavits from distinguished members of the District of Columbia bar supporting the proposition that for attorneys of the experience and reputation of Cutler and Willens, the rates billed are well within the range charged by lawyers in the District of Columbia.

As we observed in *Donovan,* a cabinet official facing the possibility of serious charges and the destruction of a longstanding reputation for devoted public service will reasonably retain "attorneys of the highest competence in their practice areas with commensurate hourly rates." 877 F.2d at 993 n. 21. In sum, we find the rates charged to be reasonable.

That said, we must determine whether the expenditure of hours was reasonable. Without attempting a point-by-point review of the lengthy billing statement, we note that not only does the statement evince a facial reasonableness, but the attorneys frequently deleted items that might raise questions of reasonableness.

■■■ This is not to say that we will allow every penny sought. Some expense items, though perhaps not unreasonable between a first class law firm and a solvent client, are not supported by indicia of reasonableness sufficient to allow us justly to tax the same against the United States. Without exhaustion, but with more detail in the list that follows, we cannot for example determine that certain "travel expenses" such as the $1,948.49 charge for travel (Cutler), and the $1,459.00 expense for travel (Willens), on January 29 and 31, 1992 respectively, are sufficiently documented to qualify for reimbursement. *Cf. Meese,* 907 F.2d at 1204 ("[F]or lack of documentation, we exclude the $707 claimed as a travel expense."). Nor, do we think Cutler's explanation of this travel expense as "returning to Washington on January 14, 1992, following meeting with Mr. Shultz on January 14, 1992" constitutes sufficient documentation. There is an old saying arising from the period of gasoline shortage during World War II: "Was this trip necessary?" In this case, we might well ask, "Was a trip this expensive necessary?" The answer is, we don't know. Since we don't know, the petitioner has not met his burden of establishing reasonableness of the items in question, and we will deduct the same from the award. The establishment of reasonableness is the petitioner's burden. He has not met it.

■■■ The following list consists of items having the same deficiency:

| DATE | DESCRIPTION | TIME KEEPER | AMOUNT |
|---|---|---|---|
| 1/29/92 | Travel—Cutler | Cutler | $1,948.49 |
| 1/31/92 | Travel—Willens | Willens | $1,459.00 |
| 3/04/92 | Local Transportation Inv. No.: 020592 AMEX 0001–Car Rental in San Fran. for MAG. W/GPS1/11 | Cutler | $ 120.93 |
| 3/20/92 | Out of Town Lodging Inv. No.: 022392 AMEX 1287–Hotel in DC | McFadden | $ 206.85 |
| 3/20/92 | Out of Town Meals Inv. No.: 022392 AMEX 1287–Meals in DC [According to the records before the Court McFadden works in the DC office of Wilmer, Cutler & Pickering] | McFadden | $ 23.59 |
| 3/19/92 | Other: 030692 AMEX 0001—Miscellaneous | Cutler | $ 17.22 |
| 3/04/92 | Travel Inv. No.: 020592 AMEX 0001–Trip To San Fran. 1/11 to meet GPS | Cutler | $ 964.00 |
| 3/16/92 | Travel Inv. No.: 022692 HERTZ Corp. Rental Car 2/5 in San Fran. | Willens | $ 86.76 |
| 3/19/92 | Inv. No.: 030692 AMEX 0001—Car Rental San Fran. 2/4 thru 6 | Cutler | $ 111.93 |
| 4/07/92 | Firm Car 3/5/92 | McFadden | $ 15.00 |
| 4/07/92 | Firm Car 3/5/92 | McFadden | $ 15.00 |
| 4/07/92 | Firm Car 3/6/92 | McFadden | $ 30.00 |
| 4/07/92 | Firm Car 3/6/92 | McFadden | $ 15.00 |
| 7/01/92 | Firm Car | McFadden | $ 15.00 |
| 8/31/92 | Firm Car | Firm | $ 75.00 |

We will therefore disallow a total of $5,103.77 as expenses for which the reasonableness has not been established. In addition to those items, which we totally disallow on this basis, there is one other item which we find in part unreasonable. On March 4, 1992, Cutler billed $394.05 for what appears to be a single night's out-of-town lodging in San Francisco. We are not certain what is reasonable for a single night's stay in San Francisco, but we are quite certain that Cutler could have found more reasonable accommodations than this if he expects the taxpayers to reimburse his client. We therefore will disallow $294.05 of this item.

We therefore deduct from the claimed attorneys' fees and expenses of $286,795.51 a total of $5,397.82 in disallowed expenses. Accordingly, we award by judgment of even date herewith a reimbursement under 28 U.S.C. § 593(f)(1) in the amount of $281,-397.69.

Judgment accordingly.