**In re Oliver L. NORTH (HASKELL FEE APPLICATION).**

**Division No. 86–6.**

United States Court of Appeals,
District of Columbia Circuit.

(Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, as Amended).

Jan. 23, 1996.

Before: SENTELLE, Presiding, BUTZNER and FAY, Senior Circuit Judges.

## ORDER

PER CURIAM.

This matter coming to be heard and being heard before the Special Division of the Court upon the application of William Haskell for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1988 and Supp. V 1993), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith, that the motion is in part well taken, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the United States reimburse William Haskell for attorneys' fees and expenses he incurred during the investigation by Independent Counsel Lawrence E. Walsh in the amount of $8,676.68 this 23rd day of January, 1996.

Opinion for the court filed PER CURIAM.

PER CURIAM:

William Haskell petitions this court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1988 and Supp. V 1993) ("the Act"), for reimbursement of attorneys' fees and expenses he incurred during and as a result of the Iran/Contra investigation conducted by Independent Counsel Lawrence E. Walsh.[1] Haskell seeks attorneys' fees in the amount of $8,736 for representation from April 5 to July 8, 1987, and expenses of $159.80. After considering Haskell's petition, we find that the request is for the most part reasonable and that he is entitled to reimbursement in the amount of $8,676.68.

## I. BACKGROUND

Consideration of this petition does not require repetition of the details of the

---

1. Independent Counsel Walsh began his investigation in 1986 and filed a Final Report in 1993. While we continue to entertain fee petitions in this matter, the court will consider untimely any fee petition filed later than six months after December 22, 1995.

Iran/Contra investigation, the facts of which are generally collected in cases cited in *In re North (Shultz Fee Application)*, 8 F.3d 847, 849 (D.C.Cir.1993) (per curiam). Haskell was a friend of Oliver North who helped in various minor capacities with North's efforts to supply the Contras during the time aid to them was limited by the Boland Amendments.[2] Specifically, Haskell helped purchase land in Costa Rica, on which was built an airstrip for use by planes that would provide supplies to the Contras; acted as courier for North and Richard V. Secord, delivering letters and funds to various people; and traveled throughout the world in connection with various transactions involving military supplies. Additionally, Haskell, who worked as a tax preparer, prepared North's tax returns for 1983, 1984, and 1985.

As directed by section 593(f) of the Act, we have submitted Haskell's fee application to the Attorney General and to IC Walsh for evaluation. The Attorney General and IC Walsh have submitted written evaluations of Haskell's fee request that will be considered in our discussion.

## II. ANALYSIS

■ Haskell is entitled to attorneys' fees under the Act if he satisfies section 593(f)(1), which allows the "subject of an investigation conducted by an independent counsel" to request reimbursement for "those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of [the Act] ... if no indictment is brought against such individual pursuant to that investigation...." 28 U.S.C. § 593(f)(1). As this court has previously held, a successful petitioner must thus demonstrate that:

(1) he is a "subject" of such investigation;

(2) the fees were incurred "during" the investigation;

(3) the fees would not have been incurred "but for" the requirements of the Act; and

(4) the fees are "reasonable."

See *In re North (Cave Fee Application)*, 57 F.3d 1117, 1119 (D.C.Cir.1995) (per curiam). We will address each of these requirements in turn.

### A. Haskell's "Subject" Status

Haskell states that IC Walsh's office specifically notified his attorney that he was a subject of the investigation. Haskell explains that he played a significant role in several of the transactions that were of great interest to the IC, that the IC required him to provide handwriting exemplars to determine whether he signed various documents in connection with the purchase of the land for the landing strip in Costa Rica, and that the IC also sought to determine whether he profited from his activities. Relying on our prior decisions in *In re North (Gadd Fee Application)*, 12 F.3d 252, 255–56 (D.C.Cir. 1994) (per curiam); *In re North (Dutton Fee Application)*, 11 F.3d 1075, 1077–79 (D.C.Cir. 1993) (per curiam); and *Shultz*, 8 F.3d at 850–51, Haskell asserts that he easily meets the subject requirement since he was told that he was a subject and he believed that IC Walsh might reasonably have pointed the finger of accusation at him.

The Attorney General, who consistent with the statutory scheme is not familiar with all details of the investigation and takes no position on whether Haskell was a subject, raises three points about Haskell's subject status. First, she notes that Haskell only received oral representations that he was in the subject category. Second, she argues that the Final Report does not provide support for the contention that Haskell was a subject since the report mentions Haskell only briefly and does not discuss his potential exposure to criminal liability. Third, the Attorney General maintains that it might be pertinent that Haskell was involved not only in the Contra resupply activities but also prepared North's tax returns, thus raising the possibility that he was a subject only with regard to the Contra activities and not to the tax preparation activities.

2. The Boland Amendments were riders to the Department of Defense Appropriation Act, Pub.L. No. 97–377, 96 Stat. 1833, 1865 (1982), which prohibited the government from spending money for the purpose of overthrowing the government of Nicaragua.

In his evaluation of Haskell's fee application, IC Walsh states that Haskell aided North without compensation in the belief that he was carrying out a program for the President and that Haskell accurately recounted his contacts with the IC staff. Based on the holdings in *Dutton* and *Gadd,* Walsh asserts that it would be ill-advised and unfair of the government to oppose Haskell's fee application.

■■■ The court has defined the term "subject" for the purposes of the Act's fee reimbursement provision as a person whose conduct is within the scope of the independent counsel's investigation and who knew at the time of incurring the fees that "his conduct was within that scope in such a fashion that 'the independent counsel might reasonably be expected to point the finger of accusation' at him." *Shultz,* 8 F.3d at 850 (quoting *Dutton,* 11 F.3d at 1078). In the Final Report, *Final Report of the Independent Counsel for Iran/Contra Matters,* August 4, 1993, IC Walsh mentions Haskell briefly in connection with the purchase of the land in Costa Rica, *id.* at 59,285; courier activities, *id.* at 174, 195–96; a proposed transaction to purchase a ship to transport arms, *id.* at 164; and an attempt to hire a lawyer to represent Eugene Hasenfus, a pilot of a Contra resupply plane who was shot down and captured in Nicaragua. *Id.* at 166–67. Haskell is not mentioned in connection with North's tax returns. Though Haskell was a minor figure, his activities were within the scope of IC Walsh's investigation, as IC Walsh indicated in his evaluation. Further, the fact that the IC's office told Haskell that he was a subject makes it clear that he meets the subject requirement. *See Shultz,* 8 F.3d at 850 (holding that under any definition of the term, the criterion for subject is squarely met when the independent counsel tells a party that he is a subject). The fact that Haskell was informed of his subject status orally, rather than in writing, is of little importance. Also, based on the Final Report, it appears that IC Walsh was interested in Haskell in connection with Haskell's own activities and not for his preparation of North's taxes.

## B. Fees Incurred "During the Investigation"

■■■ The court has identified the maximum period for which fees can be awarded as spanning from the time when the IC starts an investigation of the individual as a subject until the deadline for filing comments to the final report. *See, e.g., In re Olson,* 884 F.2d 1415, 1421–22 (D.C.Cir.1989) (per curiam). The relevant time period in this case is from April, 1987, when Haskell received a subpoena from the IC's office, to July, 1987, when his immunity was confirmed. Haskell did not file comments to the Final Report. Accordingly, Haskell's request for fees from April to July, 1987, satisfies this requirement.

## C. The "But For" Requirement

Haskell maintains that he meets the "but for" requirement on the ground that his attorneys' fees were incurred because "his position as a 'subject' was created principally by the decision of the Independent Counsel to treat as a criminal conspiracy efforts to circumvent the *Boland* Amendments." *Dutton,* 11 F.3d at 1080. In assessing the "but for" requirement of the Act, we have previously noted that a politically appointed Attorney General would not have subjected attempts to circumvent the Boland Amendments to criminal prosecution and thus "the [Iran/Contra] investigation would never have occurred ... 'but for' the appointment of the Independent Counsel under the Act." *Id.; see also In re North (Bush Fee Application),* 59 F.3d 184, 188 (D.C.Cir.1995) (per curiam).

In his evaluation, IC Walsh takes issue with one of the premises underlying the holding in *Dutton;* namely, the view that his investigation treated efforts to circumvent the Boland Amendments as a criminal conspiracy. IC Walsh argues that he made a conscious decision not to treat as criminal a mere effort to circumvent the Boland Amendments and only did so if the effort involved another crime such as a conspiracy to defraud the United States, perjury, false statements to Congress, obstruction of a congressional inquiry, or acceptance of gratuities by a public employee. While evasion of the

Boland Amendments may have motivated these crimes, IC Walsh asserts that the mere circumvention of the Amendments was not the focus of his investigation.

In *Dutton*, 11 F.3d at 1079–81, we examined in depth the aspects of the "but for" requirement in connection with the Iran/Contra investigation and accepted Dutton's argument that his subject status was created "principally by the decision of the Independent Counsel to treat as a criminal conspiracy efforts to circumvent the *Boland* Amendments." *Id.* at 1080. IC Walsh charged a conspiracy based, in part, on "supporting military operations in Nicaragua in defiance of congressional controls," *Final Report* at xii, and he stated in the Final Report that "the governmental problems presented by Iran/contra are not those of rogue operations, but rather those of Executive Branch efforts to evade congressional oversight." *Id.* at xvii. Nothing in IC Walsh's new arguments compels a departure from the holding in *Dutton* and we reaffirm its vitality.

## D. Reasonableness

■ As we have often observed, the fee petitioner bears the burden of establishing all elements of his entitlement. *See, e.g., Shultz,* 8 F.3d at 852; *Dutton,* 11 F.3d at 1081. To demonstrate the reasonableness of his fee petition, Haskell submits his attorney's memoranda describing the IC's investigation of Haskell, attorney time records compiled during his representation, a summary of costs, and an affidavit by his attorney describing his qualifications and his hourly rate. While Haskell has for the most part met the burden of demonstrating the reasonableness of his request, a few items require adjustment for reasonableness.

■ First, the Attorney General questions whether Haskell's attorney's descriptions given of his time expenditures are detailed enough to allow reimbursement under the Act. *See In re Meese,* 907 F.2d 1192, 1203–04 (D.C.Cir.1990) (per curiam) (holding that it was difficult for the court to verify reasonableness of billing where time records did not detail subject matter of work performed and reducing award by 10 percent to adjust for it). Although the descriptions provided by Haskell's attorney are terse, they are sufficient to show how his time was expended in representing Haskell in the investigation by IC Walsh. For example, the conferences with Haskell are described as concerning "the facts," or "immunity," or to "review documents." His attorney also lists meetings and phone calls with IC Walsh's prosecutors, which do not specify the subject but are obviously related to the investigation. Moreover, Haskell's attorney provides extremely detailed memoranda recording his conversations with attorneys from IC Walsh's office. We therefore conclude that the billing records were sufficiently detailed to permit reimbursement under the Act.

Noting that Haskell was granted use immunity on July 2, 1987, but is seeking reimbursement for 21.7 hours of attorney time for July 6, 7, and 8, the Attorney General contests these fees on the basis that, absent a special explanation to the contrary, fees incurred after a grant of immunity are not reimbursable under 28 U.S.C. § 593(f). *See In re North (Corr Fee Application),* 56 F.3d 261, 263–64 (D.C.Cir.1995) (per curiam); *Gadd,* 12 F.3d at 256; *Dutton,* 11 F.3d at 1078–79. Haskell states that while he was granted use immunity by a court order dated July 2, 1987, he was interviewed at length by the Independent Counsel on July 6 and 7 and his attorney spent six hours on July 8 preparing a forty-two page memo describing the debriefing. He maintains that he was not free from the risk of prosecution until the IC's attorneys satisfied themselves that the information he provided at the initial interview was accurate and that he had truthfully answered their questions. Thus, Haskell argues that the fees incurred after July 2 are reimbursable since he still was at serious risk of prosecution.

Although the Attorney General raises this issue in the context of reasonableness, it actually goes to whether Haskell retained his subject status past the July 2 grant of use immunity. In *Dutton*, 11 F.3d at 1078–79, we concluded that "an individual who would otherwise qualify as a 'subject' of an independent counsel investigation does not automatically lose that status (and his right to reimbursement of attorneys' fees) merely because

the independent counsel exercises his discretion to obtain use immunity for that individual in order to secure his testimony against others." However, immunity does "change the reasonable perception" of whether the recipient is still a subject of the independent counsel's investigation, *id.* at 1079, and the court has denied fees incurred after grants of immunity in several cases. *Id.; Gadd,* 12 F.3d at 256. In *Corr,* 56 F.3d at 263–64, however, we held that Corr retained his subject status until the third grant of use immunity because until then he remained under a reasonable apprehension of prosecution for his alleged involvement with the circumvention of the Boland Amendments. In *Cave,* 57 F.3d at 1120, the court stated that the proper test to determine whether an individual remained a subject after a grant of use immunity is whether the grand jury was examining his conduct in a way that a reasonably counseled person would believe that there was a realistic possibility he would become a defendant. The court concluded that Cave retained his subject status after a grant of use immunity because the government had sources other than Cave upon which it could have based charges against Cave so that use immunity did not protect him from the possibility of prosecution. *Id.*

■ It appears that Haskell was still under a threat of prosecution until the IC's office determined that the information he provided was truthful, and he therefore retained his subject status until the IC's office was satisfied. Furthermore, it was reasonable for his attorney to attend Haskell's debriefing by the IC's attorneys and to prepare a detailed memorandum of the debriefing. Accordingly, Haskell may recover his attorneys' fees incurred on July 6, 7, and 8.

■ Additionally, the Attorney General notes that Haskell's attorney's billing entries for April 15, 17, and 18, 1987, refer to reviewing a Senate subpoena, reviewing Senate select committee rules, meeting with Senate staff, and reviewing rules of procedure for the Senate Select Committee. These entries are mixed in with other items that relate solely to IC Walsh's investigation and the time is not broken down by task. The billing for these days totals 13.7 hours and Haskell's

attorney has subtracted 3.5 hours for the time he estimates was spent on Senate matters, since fees incurred in connection with congressional matters are not reimbursable under 28 U.S.C. § 593(f). *See In re North (Shields/Gruner Fee Application),* 53 F.3d 1305, 1308 (D.C.Cir.1995) (per curiam); *Gadd,* 12 F.3d at 256–57. The Attorney General asserts that Haskell did not adequately explain the claim that only 3.5 hours related to congressional matters and she states that, absent further explanation, a greater deduction is warranted. We agree that Haskell's explanation is incomplete and we will consider that approximately one-third of the 13.7 hours spent during that period, 4.6 hours, was spent in connection with congressional matters. Because Haskell has already deducted 3.5 hours, we will deduct an additional 1.1 hours or $154 in attorneys' fees. We will likewise deduct the $9 claimed for carfare and delivery to the Senate.

■ Lastly, we agree with the Attorney General's objection to Haskell being reimbursed for attorneys' fees for a telephone conference with reporters and for the cost of lunch with his lawyer on June 8, 1987. Media-related activity is not reasonably related to defending against an independent counsel's investigation and is therefore not reimbursable under the Act. *See In re North (Gardner Fee Application),* 30 F.3d 143, 147 (D.C.Cir.1994) (per curiam); *In re Donovan,* 877 F.2d 982, 994 (D.C.Cir.1989) (per curiam). We will therefore deduct the $42 claimed for the telephone conference with reporters. Likewise, we will deduct the $14.12 lunch expense claimed because the cost of meals is not reimbursable under the Act. *Gardner,* 30 F.3d at 147 n. 4; *Gadd,* 12 F.3d at 257–58.

## E. Final Calculations

In his petition, Haskell requested reimbursement for 62.4 hours of attorney time billed at $140 per hour for a total of $8,736 and $159.80 in expenses. In accordance with the above analysis, we will make the following deductions from Haskell's request:

| Attorneys' fees requested | | $8,736 |
|---|---|---|
| Deduction for Senate work | $154 | |
| Deduction for media work | $42 | |
| Attorneys' fees awarded | | $8,540 |

| Expenses requested | | $159.80 |
|---|---|---|
| Deduction for Senate expense | $9 | |
| Deduction for lunch expense | $14.12 | |
| Expenses awarded | | $136.68 |

Accordingly, Haskell is entitled to reimbursement of $8,676.68 for attorneys' fees and expenses.

## III. CONCLUSION

Based on the foregoing analysis, we will grant Haskell's petition in part and award $8,540 for attorneys' fees and $136.68 for expenses, making a total award of $8,676.68.

*Judgment accordingly.*