**In re Oliver L. NORTH (WALKER FEE APPLICATION).**

**Division No. 86–6.**

United States Court of Appeals, District of Columbia Circuit.

(Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, as Amended).

Jan. 23, 1996.

Before: SENTELLE, Presiding, BUTZNER and FAY, Senior Circuit Judges.

## ORDER

PER CURIAM.

This matter coming to be heard and being heard before the Special Division of the Court upon the application of William Walker for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1988 and Supp. V 1993), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith, that the motion is well taken, it is hereby

**ORDERED, ADJUDGED,** and **DE-CREED** that the United States reimburse William Walker for attorneys' fees and expenses he incurred during the investigation by Independent Counsel Lawrence E. Walsh in the amount of $11,914.05 this 23rd day of January, 1996.

Before: SENTELLE, Presiding,
BUTZNER and FAY, Senior Circuit Judges.

Opinion for the court filed PER CURIAM.

PER CURIAM:

William Walker petitions this court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1988 and Supp. V 1993) ("the Act"), for reimbursement of attorneys' fees and expenses he incurred during and as a result of the Iran/Contra investigation conducted by Independent Counsel Lawrence E. Walsh.[1] Walker seeks attorneys' fees in the amount of $11,772 for representation from July 25, 1991, to August 17, 1993, and expenses of $151.05. After considering Walker's petition, we find that the request is reasonable and that he is entitled to full reimbursement of his attorneys' fees and $142.05 in costs.

1. Independent Counsel Walsh began his investigation in 1986 and filed a Final Report in 1993. While we continue to entertain fee petitions in this matter, the court will consider untimely any fee petition filed later than six months after December 22, 1995.

2. In August 1988, Walker was appointed United States Ambassador to El Salvador and served in that position until March 1992.

## I. BACKGROUND

Consideration of this petition does not require repetition of the details of the Iran/Contra investigation, the facts of which are generally collected in cases cited in *In re North (Shultz Fee Application),* 8 F.3d 847, 849 (D.C.Cir.1993) (per curiam). Walker is a career foreign service officer at the State Department who served as Deputy Assistant Secretary of State for Central America from July 1985 through August 1988.[2] In August 1985, Congress appropriated $27 million for humanitarian aid to the Contras, and President Reagan created the Nicaraguan Humanitarian Assistance Office ("NHAO") in the State Department to administer this aid. *Final Report of the Independent Counsel for Iran/Contra Matters,* Aug. 4, 1993, at 377. At this time, the Boland Amendments[3] prohibited the government from providing military aid to the Contras.

Walker was involved with NHAO and its operations in supplying humanitarian aid to the Contras. In December 1985, Walker, along with a number of United States officials, attended a meeting at the Ilopango air base in El Salvador to discuss the logistics of supplying NHAO aid to the Contras from Ilopango. At that time, Ilopango was also used to supply military aid to the Contras. Additionally, Walker attended some meetings of the Restricted Interagency Group for Central America, of which Oliver North was a member.

As directed by section 593(f) of the Act, we have submitted Walker's fee application to the Attorney General and to Independent Counsel ("IC") Walsh for evaluation. The Attorney General and IC Walsh have submitted written evaluations of Walker's fee request that will be considered in our discussion.

3. The Boland Amendments were riders to the Department of Defense Appropriation Act, Pub.L. No. 97–377, 96 Stat. 1833, 1865 (1982), which prohibited the government from spending money for the purpose of overthrowing the government of Nicaragua.

## II. ANALYSIS

Walker is entitled to attorneys' fees under the Act if he satisfies section 593(f)(1), which allows the "subject of an investigation conducted by an independent counsel" to request reimbursement for "those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of [the Act]," "if no indictment is brought against such individual pursuant to that investigation. . . ." 28 U.S.C. § 593(f)(1). As this court has previously held, a successful petitioner must thus demonstrate that:

> (1) he is a "subject" of such investigation;
>
> (2) the fees were incurred "during" the investigation;
>
> (3) the fees would not have been incurred "but for" the requirements of the Act; and
>
> (4) the fees are "reasonable."

See In re North (Cave Fee Application), 57 F.3d 1117, 1119 (D.C.Cir.1995) (per curiam). We will address each of these requirements in turn.

### A. Walker's "Subject" Status

During the first four and one half years of the investigation, IC Walsh repeatedly questioned Walker, who was classified as a witness. In June 1991, however, IC Walsh informed Walker that his status was changed to subject, and Walker then retained Schwalb, Donnenfeld, Bray and Silbert. Walker testified before the grand jury on July 26 and 30, 1991, and his attorneys had a series of telephone conferences and meetings with IC Walsh's staff. In July 1992, Walker was interviewed by a member of IC Walsh's staff, who told him that he was still a subject of the investigation. In 1993, Walker and his attorneys reviewed IC Walsh's Final Report and concluded that Walker did not need to file a response to it.

The Attorney General states that Walker's application adequately demonstrates that he is eligible for a fee award and that the amount requested is reasonable. In his evaluation of Walker's fee application, IC Walsh states that Walker's description of his subject status is correct and that the fees requested are reasonable.

The court has defined the term "subject" for the purposes of the Act's fee reimbursement provision as a person whose conduct is within the scope of the independent counsel's investigation and who knew at the time of incurring the fees that "his conduct was within that scope in such a fashion that 'the independent counsel might reasonably be expected to point the finger of accusation' at him." Shultz, 8 F.3d at 850 (quoting In re North (Dutton Fee Application), 11 F.3d 1075, 1078 (D.C.Cir.1993) (per curiam)). In the Final Report, IC Walsh mentions Walker briefly in connection with the trip to Ilopango air base and meetings of the Restricted Interagency Group. Though he was a minor figure, it is clear that Walker's activities were within the scope of IC Walsh's investigation of alleged attempts to circumvent the Boland Amendments by supplying military aid to the Contras. Moreover, the fact that the IC's office told Walker he was a subject makes it clear that IC Walsh might reasonably have been expected to accuse him of wrongdoing. See Shultz, 8 F.3d at 850 (holding that under any definition of the term, the criterion for subject is squarely met when the independent counsel tells a party that he is a subject). Accordingly, Walker qualifies as a subject under the Act.

### B. Fees Incurred During the Investigation

Walker seeks fees for representation from July 1991, after IC Walsh notified him that he was a subject, until August 1993, when he reviewed the Final Report. The court has identified the maximum time for which fees can be sought as spanning from the start of an independent counsel investigation of the individual through to the deadline for filing comments to the final report. See, e.g., In re Olson, 884 F.2d 1415, 1421–22 (D.C.Cir.1989) (per curiam). Accordingly, Walker satisfies this requirement.

### C. The "But For" Requirement

Walker maintains that he meets the "but for" requirement on the ground that his attorneys' fees were incurred because "his position as a 'subject' was created principally by the decision of the Independent

Counsel to treat as a criminal conspiracy efforts to circumvent the *Boland* Amendments." *Dutton,* 11 F.3d at 1080. In assessing the "but for" requirement of the Act, we have previously noted that a politically appointed Attorney General would not have subjected attempts to circumvent the Boland Amendments to criminal prosecution and thus "the [Iran/Contra] investigation would never have occurred ... 'but for' the appointment of the Independent Counsel under the Act." *Id.,* 11 F.3d at 1080. *See also In re North (Bush Fee Application),* 59 F.3d 184, 188 (D.C.Cir.1995) (per curiam). Walker states that the activities for which he was investigated by IC Walsh fall into the category of attempts to circumvent the Boland Amendments. He further argues that his position is similar to that of Secretary of State George Shultz, who was also labeled a subject four and one-half years into IC Walsh's investigation after being treated as a witness up to that point. Walker maintains that, as with Secretary Shultz, there was no extraordinary circumstance that precipitated his change of status in July 1991 and that no professional prosecutor "would have been making subjects out of persons theretofore treated as witnesses four and one-half years after the commencement of an investigation, absent some circumstance far more extraordinary than any displayed to us here." *Shultz,* 8 F.3d at 851.

IC Walsh does not dispute that Walker satisfies the "but for" requirement as set forth in *Dutton* and *Shultz,* but he asserts that the Attorney General never conducted a formal investigation and thus the holding in *Shultz,* 8 F.3d at 851, is flawed because it incorrectly states that Attorney General Meese "conduct[ed] an investigation of the events involving [Shultz's] conduct and did not recommend any criminal action or investigation against him." Attorney General Meese started gathering documents and interviewing witnesses as part of an inquiry into the shipment of arms to Iran and any Contra connection starting on November 21, 1986, announced his findings publicly on November 25, 1986, and started a criminal investigation on November 26, 1986. *Final Report* at 24–25. Whether Meese's undertaking is called an inquiry or an investiga-

tion, it is clear that the Attorney General looked into the matter. Notably, IC Walsh fails to point to anything in the Final Report or elsewhere that suggests that the Attorney General uncovered anything wrong with Shultz's conduct regarding the Iran/Contra matters, and our review reveals no such finding by Meese. As we observed in *Shultz,* 8 F.3d at 851, it was the appointment of the Independent Counsel that caused the "atypical treatment" of Shultz's conduct since the Attorney General would not have treated Shultz's actions as having criminal consequences. We therefore reject IC Walsh's objections to the holding in *Shultz.*

Based on the Final Report, it appears that IC Walsh was concerned with Walker's activities regarding NHAO aid to the Contras, his knowledge of activities at Ilopango air base, and his participation in the Restricted Interagency Group. All of these activities relate to an alleged conspiracy to circumvent the Boland Amendments by supplying lethal aid to the Contras. As previously noted, a politically appointed Attorney General would not have subjected attempts to circumvent the Boland Amendments to criminal prosecution and thus the Iran/Contra investigation would never have occurred "but for" the appointment of the Independent Counsel. *Dutton,* 11 F.3d at 1080; *see also Shultz,* 8 F.3d at 851. We therefore conclude that Walker would not have incurred his attorneys' fees but for the requirements of the Act.

## D. Reasonableness

As we have often observed, the fee petitioner bears the burden of establishing all elements of his entitlement. *See, e.g., Shultz,* 8 F.3d at 852; *Dutton,* 11 F.3d at 1081. To demonstrate the reasonableness of his fee petition, Walker submits his attorneys' contemporaneously prepared time records supplemented with more detailed descriptions for the fee petition, a summary of costs, affidavits by his attorneys, and an affidavit from a knowledgeable attorney about the reasonableness of the hourly rates charged by Walker's attorneys. Upon review of these submissions, we conclude that Walker has demonstrated that the attorneys' fees incurred were reasonable and we will award

the full amount requested. As for costs, we will deduct a $9 charge for local transportation on September 3, 1991, that was not adequately explained and will therefore grant $142.05 in costs.

## III. CONCLUSION

Based on the foregoing analysis, we will grant Walker's petition and award $11,772 for attorneys' fees and $142.05 for expenses, making a total award of $11,914.05.

*Judgment accordingly.*