# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed May 6, 2005

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN
(MOORE FEE APPLICATION)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before: SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges* .

## O R D E R

This matter coming to be heard and being heard before the Special Division of the Court upon the application of Matthew L. Moore for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (2000), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith, that the petition is not well taken, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the petition of Matthew L. Moore for attorneys' fees that he incurred during the Independent Counsel's investigation be denied, save for a single unique item.

*PER CURIAM*
For the Court:
Mark J. Langer, Clerk

By:

Marilyn R. Sargent
Chief Deputy Clerk

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed May 6, 2005

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN
(MOORE FEE APPLICATION)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before: SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges* .

## ON APPLICATION FOR ATTORNEYS' FEES

Opinion for the Special Court filed *PER CURIAM*.

*PER CURIAM*: Matthew L. Moore petitions this Court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. §§ 591-599 (2000) ("the Act"), for reimbursement of attorneys' fees in the amount of $74,477.04 that he claims were incurred during and as a result of the investigation conducted by Independent Counsel. Because we conclude that Moore has not carried his burden of establishing all of the elements of his entitlement, we deny the petition except for a single unique item.

# I. Background[1]

In May of 1993, William David Watkins ("Watkins"), who was at that time Assistant to the President for Management and Administration, fired seven employees of the White House Travel Office. Because of allegations of wrongdoing surrounding the firings, various entities, including the Congress and the General Accounting Office ("GAO"), undertook investigations of the matter. First Lady Hillary Rodham Clinton ("Clinton") was reportedly questioned during these investigations concerning her role in the firings. She asserted that she had little if any involvement in them. When questioned by the GAO, Watkins also stated that Clinton was minimally involved. These statements were put into doubt when drafts of a 1993 memo, written by Watkins and arguably contradicting his and Clinton's testimony, were subsequently produced by the White House. Matthew L. Moore, the fee petitioner here, apparently had a hand in the drafting of the memo. He is self-described as "a former junior member of the White House staff who worked for Mr. Watkins within the White House Office of Administration during 1993-94."

Following these events, the GAO filed a criminal referral with the Department of Justice ("DOJ"), suggesting that Watkins may have made false statements when interviewed by the GAO. Because Watkins was a covered person under the Independent Counsel Act, *see* 28 U.S.C. § 591(b), the Attorney General ("AG") initiated a preliminary investigation pursuant to

---

[1]We have had recent occasion to review the facts of this matter in *In re Madison Guaranty Savings & Loan (Watkins Fee Application),* 375 F.3d 1211, 1212-13 (D.C. Cir., Spec. Div., 2004) (per curiam). Rather than re-plow recently tilled ground, we have adopted from that opinion much of the language for the background portion of this opinion.

28 U.S.C. § 592, in order to determine whether further investigation was warranted. Although the usual duration for a preliminary investigation is 90 days, the AG took considerably less time in this case, concluding rather quickly that further investigation was indeed warranted. Consequently, she requested that this court expand the Independent Counsel's ("IC" or "OIC") jurisdiction to investigate, among other things, whether Watkins or Clinton had made false statements to the GAO regarding the Travel Office firings.

The IC then conducted an extensive investigation of the matter, including Moore's involvement. Ultimately, the IC determined that Moore would not be charged with any offense. Pursuant to § 593(f)(1) of the Act, Moore now petitions the court for reimbursement of the attorneys' fees in the amount of $74,477.04 that he claims were incurred in defense of the IC's investigation.

## II. Discussion

The Independent Counsel statute provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

28 U.S.C. § 593(f)(1). Accordingly, in order to obtain an attorneys' fees award under the statute, a petitioner must show that all of the following requirements are met: (1) the petitioner

is a subject of the investigation, (2) the fees were incurred during the investigation, (3) the fees would not have been incurred but for the requirements of the Act, and (4) the fees are reasonable. *See In re North (Dutton Fee Application)*, 11 F.3d 1075, 1077-82 (D.C. Cir., Spec. Div., 1993) (per curiam). The petitioner "bears the burden of establishing all elements of his entitlement." *In re North (Reagan Fee Application)*, 94 F.3d 685, 690 (D.C. Cir., Spec. Div., 1996) (per curiam).

The primary issues regarding Moore's fee petition are whether or not he has satisfied the "but for" requirement as well as which time periods he was considered a "subject" of the IC's investigation. For the reasons stated below we find that Moore fails the "but for" test, and on that basis alone is not entitled to reimbursement of fees incurred during the IC's investigation. We therefore need not address the "subject" issue, although we note that we are in agreement with both the IC and the DOJ that at least for a limited period of time Moore's status was indeed that of a subject.

\* \* \* \* \* \* \* \* \*

We have in the past held that "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case*, 890 F.2d 451, 452 (D.C. Cir., Spec. Div., 1989) (per curiam). On numerous occasions we have also held that "the contemplation of the legislation is not that subjects of independent counsel investigations will be reimbursed for all legal fees, but only . . . for those legal fees that would not have been incurred by a similarly-situated subject investigated in the absence of the Act." *See In re Madison Guaranty Savings & Loan (Clinton Fee Application),* 334 F.3d 1119, 1123 (D.C. Cir., Spec. Div., 2003) (per curiam).

Moore's position.    Moore contends that there are several "independent grounds . . . for why he would not have been forced to incur the legal fees he did in this investigation were it not for the requirements of the Act."    His first argument is that "there would not have been an investigation at all because who ordered the Travel Office firings was inconsequential from a criminal standpoint."    In support of this statement, Moore first notes that the IC in his Final Report acknowledged that the firings were lawful.  He then goes on to claim that the "principal controversy" in the matter was whether anyone should be held publicly accountable for the firings.    And he sums up this argument by asserting that "it is highly improbable that a professional prosecutor would have initiated an investigation into the motivation for the lawful Travel Office firings almost three years after the fact."

Moore next asserts that no "prosecutor's office other than the OIC would have spent three to four years investigating [him] in light of his low rank and largely incidental knowledge of the underlining facts prior to determining not to prosecute.    The OIC's initial classification of Moore as a witness normally would have ended his risk of prosecution . . . ."

Moore's third argument for passing the "but for" test contends that the AG, instead of "conduct[ing] a comprehensive preliminary investigation of the matter, . . . simply requested that the Independent Counsel's jurisdiction be expanded to include an investigation of those allegations," and that if the IC had not already been investigating related matters, then no investigation of the matter by the AG would have been undertaken.    Moore's reasoning behind this argument is somewhat convoluted: both the IC and the GAO referred the matter of the alleged false statements to the AG, who requested that this court expand the IC's jurisdiction to investigate the matter; if the IC had not been investigating the matter then the

only referral would have been from the GAO; false statements made to the government are prosecuted under 18 U.S.C. § 1001; prosecutions can only be brought under § 1001 if the false statements were made to departments or agencies of the executive branch, *see Hubbard v. United States*, 514 U.S. 695 (1995); consequently, since GAO is an arm of the Congress, and not the executive branch, then "the Attorney General would not have had any reason to initiate a criminal investigation into Mr. Watkins's statements;" if there had been no ongoing independent counsel investigation then there would never have been an investigation of the alleged false statements; therefore, "but for" the IC's investigation there would have been no investigation of the matter, and Moore would not have incurred any legal fees.

For his fourth argument, Moore contends that in the past the court has awarded fees to applicants "where an independent counsel's investigation constituted a substantial duplication of prior investigations." He claims that in his case "the Independent Counsel's investigation was duplicative of seven other preceding investigations" and that the IC's investigation "primarily replicated these earlier investigations, covered little new ground, and arrived at substantially the same conclusions." According to Moore, the seven prior investigations of the Travel Office firings replicated by the IC were conducted by: the White House; the FBI; the Office of Professional Responsibility; the GAO; the Treasury Department; the Senate Banking Committee; and the House Committee on Government Reform and Oversight.

Moore bases his fifth argument for passing the "but for" test on "the Independent Counsel's reversal on Moore's 'subject' status following his substantial cooperation." In particular, Moore asserts that when the IC first began its investigation of this matter, he cooperated by producing documents to, and

appearing before, two federal grand juries, and also at that time producing documents and being deposed by a Congressional committee. He claims that soon thereafter the "OIC again informed him that he remained a witness and not a subject of the investigation." However, after the passage of a year, during which Moore asserts that he "was not contacted by the OIC and no new evidence against him was developed," he was "inexplicably advised" that his status was changed to that of subject. In arguing that under these circumstances he passes the "but for" test, Moore relies on two fee opinions issued by this court following an investigation of the Iran/Contra matter by independent counsel, i.e., *In re North (Shultz Fee Application)*, 8 F.3d 847, 849 (D.C. Cir., Spec. Div., 1993) (per curiam); *In re North (Cave Fee Application)*, 57 F.3d 1117, 1119 (D.C. Cir., Spec. Div., 1995) (per curiam). In both of those cases, according to Moore, the fee applicants, like him, had cooperated with the independent counsel and were considered to be only witnesses until some time (i.e., four and one-half years) later when their statuses were changed to subjects. Moore notes that, consequently, the court held that the applicants fulfilled the "but for" requirement, and he quotes from the court's opinions:

> [I]t is not reasonable to expect that a professional prosecutor, as opposed to an independent counsel under the Act, would have been making subjects out of persons theretofore treated as witnesses four and one-half years after the commencement of an investigation, absent some circumstance far more extraordinary than any displayed to us here.

*Shultz*, 8 F.3d at 851; *Cave*, 57 F.3d at 1121.

Returning to his own situation, Moore claims that "[a]s in *Shultz* and *Cave*, the Court should conclude that [his] attorneys' fees prior to being immunized would not have been incurred

'but for' the requirements of the Act."

IC's position. The IC puts forth two separate arguments for why she believes that Moore has not satisfied the "but for" requirement. As she did concerning the fee application of Watkins, the IC argues that the serious allegations involved in this matter, i.e., "whether Watkins or Hillary Clinton had obstructed justice, committed perjury, or made false statements," would have been investigated in the absence of the Act. Consequently, in the view of the IC, because Moore was a drafter of the Watkins memo and therefore a critical witness regarding its origin, "no matter who investigated Mrs. Clinton's and Watkins' conduct, necessarily Moore would have been questioned about the drafting of that memo."

Second, the IC argues that Moore's claim of passing the "but for" test because the IC's investigation duplicated numerous other investigations is without merit. All of the former investigations, according to the IC, which were conducted before the Watkins memo was produced, concerned the Travel Office firings. In contrast, states the IC, "the OIC did not investigate the firings, except to the extent necessary to determine whether Watkins or the First Lady had made false statements." As such, "[t]here is no evidence that the OIC's investigation was duplicative."

In sum, the IC states that in order for Moore to pass the "but for" test, he "must distinguish his attorney fees from those incurred in a regular grand jury investigation, and this he has failed to do."

DOJ's position. The DOJ also argues that Moore has not passed the "but for" test, and states four reasons why it believes this is so. Initially, the DOJ contends that, "as a general matter, the record indicates that the allegations here - concerning

alleged lies to Congress, the GAO, and other investigative bodies - are clearly the sort of matters that would be investigated in the normal course by the Department of Justice." In support of this contention, the DOJ notes that before the investigation by the IC, the Travel Office matter was being looked into by regulatory independent counsel Fiske.

Next, the DOJ addresses Moore's third argument that the AG, instead of conducting a lengthier preliminary investigation, simply referred the matter to the IC, and that if no IC had been in existence investigating related matters, then no investigation by the AG would have been undertaken. The DOJ argues that Moore's implication that the preliminary investigation here was particularly short is without merit, in that it lasted over one month. Furthermore, the DOJ contends that Moore "does not challenge the underlying premise for seeking appointment of an Independent Counsel - that various known statements made concerning the travel office matter appeared to contain material inconsistencies," and that "[u]nder these circumstances, a more extensive preliminary investigation was unnecessary." The DOJ concludes its argument here by asserting that Moore, whatever the merits of his legal theory concerning § 1001, "has not shown . . . that this issue was in any way relevant to the Attorney General's preliminary investigation." According to the DOJ, Moore also does not "address the fact that the travel office investigation also involved other statements, made to parts of the Executive Branch, as to which there is no doubt that section 1001 applied."

Third, the DOJ addresses Moore's claim that he satisfies the "but for" element because the IC's investigation duplicated prior investigations. The DOJ notes that for reimbursement of attorneys' fees purposes, the court has made clear that the only relevant duplication by the IC's investigation is that of the AG's preliminary investigation, and Moore makes no claim that any

such duplication occurred.

Lastly, the DOJ rejects Moore's assertion that he fulfills the "but for" requirement because his status was changed from witness to subject after the passage of a year. In particular, the DOJ takes issue with Moore's reliance on certain of the court's fee opinions in the *North* investigation, in which it was noted that a professional prosecutor would not have changed a witness's status to that of subject four and one-half years after the investigation had begun. The DOJ argues "that not nearly so much time passed in the case of Mr. Moore, and that any 'delay' here might have been warranted by any number of circumstances."

\* \* \* \* \* \* \* \* \*

In his first three arguments for passing the "but for" test, Moore in effect contends that if the IC had not already been investigating related matters, then, because the matter here was not serious and his role was minor, no other prosecutor would have bothered looking into the allegations. In *Watkins* the fee applicant made a somewhat similar contention, arguing that an ordinary citizen would never have been subjected to an investigation such as he was. In rejecting that argument, we noted that "the allegations here of false statements to federal entities and the failure to produce subpoenaed documents would have been investigated with or without the Independent Counsel statute." *Watkins*, 375 F.3d at 1216. Applying the same reasoning here, we find that in all likelihood Moore's involvement in the matter would have been investigated regardless of who conducted the investigation.

Moore's fourth argument, concerning duplication of investigations, is without merit. As the DOJ correctly notes, we have consistently held that the "but for" requirement will be

satisfied if the IC duplicates the AG's preliminary investigation but that duplication of other investigations, including those of other government agencies or the Congress, will not suffice. *See, e.g., Watkins*, 375 F.3d at 1215-16. Here, Moore claims that the IC duplicated seven other investigations, none of which involved the preliminary investigation. Therefore, this argument must fail.

Concerning Moore's fifth argument, that after one year of being a witness his status was inexplicably changed to subject and therefore his situation falls within the precedential orbit of *Shultz* and *Cave*, the facts would not appear to support his contention. First, the court in *Cave* and *Shultz* stated that "in the experience of the court," it would not be "reasonable" to expect a professional prosecutor to change the status of the fee applicants after the lengthy period of four and one-half years. Here, the period of time in question is substantially less, only one year, and any change in status after this relatively short period of time would not appear to be unreasonable. Furthermore, in *Cave* and *Shultz* it was not just the length of time that the independent counsel took to change the status of the fee applicants from witness to subject that led to the court's holding that he satisfied the "but for" requirement, but also that the IC treated as criminal conduct which had never before been considered as such, i.e., circumvention of the Boland Amendments. *Cave*, 57 F.3d at 1121; *Shultz*, 8 F.3d at 851. In contrast, the main allegations in this matter concerned perjury and obstruction of justice. As both the DOJ and the IC point out, such crimes are routinely investigated by the DOJ.

In sum, we find that Moore has not passed the "but for" test, and is therefore not eligible for reimbursement of fees incurred during the IC's investigation.

\* \* \* \* \* \* \* \* \*

Moore argues that in any event he should be reimbursed for attorneys' fees incurred in reviewing and responding to the IC's Final Report. He contends that in the Report the IC made an "unjustified public attack on his professional reputation" by "unfairly impl[ying] that [he] acted improperly by initially refusing to disclose documents subject to a claim of attorney client privilege." For these tasks he seeks $14,597.50 in fees and $849.02 in costs.

Additionally, in preparing his response to the Report, Moore hired a second law firm to produce an "expert" affidavit addressing Moore's attorney-client privilege claim. This affidavit was submitted along with Moore's own comments to the Report. According to Moore, the affidavit stated that he had "acted correctly and in accordance with his ethical obligations as an attorney," and was necessary because of the IC's "unreasonable and unwarranted insistence on attacking [his] professional credibility without rationally evaluating the issues." The fee for this affidavit, for which Moore seeks reimbursement, was $17,892.41.

In sum, for responding to the IC's Final Report Moore seeks reimbursement in the amount of $33,338.93. This is approximately 45% of the total fees sought.

In her evaluation, the IC argues that this amount "seems excessive." She notes that in contrast to Moore, Watkins spent only $7,517.75 in responding to the Final Report. Furthermore, she points out that Moore's primary contention in his comments to the Final Report was that it was reasonable for him to assert the attorney-client privilege concerning the Watkins memo. In the opinion of the IC, the amount spent by Moore on this contention is unreasonable.

The DOJ also takes issue with the considerable amount requested by Moore for reviewing and responding to the IC's Report. Noting that this amount is a substantial percentage of the total requested, the DOJ cites *In re North (Gardner Fee Application)*, 30 F.3d 143, 147 (D.C. Cir., Spec. Div., 1994), and states that the amount "cannot, consistent with this Court's precedent, be reimbursed in full," as it is "disproportionately large in light of the overall sum sought."

Section 594 of the Act imposes the requirement that the IC "file a final report with the division of the court, setting forth fully and completely the description of the work of the independent counsel . . . ." 28 U.S.C. § 594(h)(1)(B). The Act further allows that the court make the Report available to those named in it for their review and comment. 28 U.S.C. § 594(h)(2). Consequently, in *In re Olson*, 884 F.2d 1415, 1421 (D.C. Cir., Spec. Div., 1989) (per curiam), we observed that "attorneys' fees incurred by the subject of an investigation in the preparation of comments to the Report are reimbursable where they are reasonably related to the substantive defense."

We have further noted that, outside of the requirements of the Act, federal "prosecutors do not issue reports." *In re North,* 16 F.3d 1234, 1238 (D.C. Cir., Spec. Div., 1994) (per curiam). "Indeed . . . the filing of reports by Independent Counsels is a complete departure from the authority of a United States Attorney and is contrary to the practice in federal Grand Jury investigations." *In re Madison Guaranty Savings & Loan (Clinton Fee Application)*, 334 F.3d at 1128 (internal quotation marks and citations omitted). Moore is therefore eligible for reimbursement of attorneys' fees incurred for the task of responding to the Final Report, as such fees would not have been incurred but for the requirements of the Act.

As noted previously, Moore's request for reimbursement in this area is approximately 45% of the total amount sought. Other cases, in which the fees sought for Final Report review and comment also amounted to a significant portion of the total, led us to make substantial reductions. In *In re North (Gardner Fee Application)*, 30 F.3d at 147-48, the fee applicant requested reimbursement for responding to an independent counsel's Final Report in an amount that was more than one-fourth of the total fees incurred. Although we noted that the final report concerning the investigation "was lengthy and complex and cast a number of aspersions on [the fee applicant]," we nevertheless reduced the amount sought for this task by one-half, to 13% of the total incurred. Likewise, in *In re North (Shields and Gruner Fee Applications)*, 53 F.3d 1305 (D.C. Cir., Spec. Div., 1995) (per curiam), for responding to the Final Report the fee applicants sought an amount that was close to 20% of the total requested. Noting that this was "a significant part" of the total requested, we reduced the amount by one-half, to 10%. 53 F.3d at 1308. *See also In re North (Regan Fee Application)*, 72 F.3d 891, 896 (D.C. Cir., Spec. Div., 1995) (per curiam) (request for responding to Final Report reduced by one-half, to 15% of total request). Therefore, in conformance with this line of cases, we find that a more reasonable figure here would be reimbursement of 10% of the total requested, or $7,447.70. *Cf. Watkins,* 375 F.3d at 1216 (awarding a similar amount, $7,517.75, to Watkins for the same task).

## Conclusion

For the reasons set forth above, we allow the petition for fees of Matthew L. Moore only to the extent of $7,447.70. Except as herein specifically allowed, the petition is denied.