# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed July 5, 2005

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN
(BERNATH FEE APPLICATION)

———

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

———

Before:   SENTELLE, *Presiding*, FAY and REAVLEY, *Senior
Circuit Judges*.

## O R D E R

This matter coming to be heard and being heard before the
Special Division of the Court upon the application of Clifford H.
Bernath for reimbursement of attorneys' fees and costs pursuant
to section 593(f) of the Ethics in Government Act of 1978, as
amended, 28 U.S.C. § 591 *et seq*. (2000), and it appearing to the
court for the reasons set forth more fully in the opinion filed
contemporaneously herewith, that the petition is not well taken,
it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the petition of Clifford H. Bernath for attorneys' fees that he incurred during the Independent Counsel's investigation be denied.

*PER CURIAM*
For the Court:
Mark J. Langer, Clerk
By:

Marilyn R. Sargent
Chief Deputy Clerk

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Filed July 5, 2005

Division No. 94-1

IN RE: MADISON GUARANTY SAVINGS & LOAN
(BERNATH FEE APPLICATION)

---

Division for the Purpose of
Appointing Independent Counsels
Ethics in Government Act of 1978, As Amended

---

Before:    SENTELLE, *Presiding*, FAY and REAVLEY, *Senior Circuit Judges*.

## ON APPLICATION FOR ATTORNEYS' FEES

Opinion for the Special Court filed *PER CURIAM*.

*PER CURIAM*:  Clifford H. Bernath petitions this Court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. §§ 591-599 (2000) ("the Act" or "the Independent Counsel Statute"), for reimbursement of attorneys' fees in the amount of $6,093.75, that he claims were incurred during and as a result of the investigation conducted by Independent Counsel.  Because we conclude that Bernath has not carried his burden of establishing all of the elements of his entitlement, we deny the petition in its entirety.

**Background**[1]

During the mid-1990's, President William Jefferson Clinton was involved in a sexual relationship with Monica Lewinsky, a White House intern and subsequent employee. In April of 1996, following her term at the White House, Lewinsky was hired as a confidential assistant to Kenneth H. Bacon, the Assistant Secretary of Defense for Public Affairs. While working for Bacon, Lewinsky befriended a fellow employee in Bacon's department, Linda Tripp, and confided to Tripp the details of her relationship with the President.

Subsequently, in December of 1997, Lewinsky was subpoenaed to testify in a sexual discrimination case filed against President Clinton by Paula Jones. Jones had been a state employee in Arkansas during the 1980's when Clinton was Governor there, and alleged that during that time he had solicited sex from her, that she had declined, and that as a result her state employment had been illegally affected. In subpoenaing Lewinsky, Jones's attorneys were apparently seeking to discover whether there were other government employees from whom the President had solicited a sexual relationship. Clinton and Lewinsky, however, had previously decided to deny their relationship if asked, and Lewinsky told Tripp of her intention to lie about it in her upcoming testimony. In a number of telephone conversations, Tripp recorded these intent-to-lie statements made by Lewinsky.

---

[1]We have had recent occasion to review the facts of this matter in *In re Madison Guaranty Savings & Loan (Bacon Fee Application),* 393 F.3d 1317, 1318-19 (D.C. Cir., Spec. Div., 2005) (per curiam). Rather than re-plow recently tilled ground, we have adopted from that opinion much of the language for the background portion of this opinion.

Ongoing at the same time was an investigation by Independent Counsel Kenneth W. Starr (hereinafter "IC" or "OIC") into allegations of impropriety concerning certain business dealings by Clinton and others while he was Governor. After recording the telephone conversations, Tripp conveyed the substance of them to IC Starr. Starr in turn presented this information to the Attorney General who then, pursuant to § 592(c) of the Act, applied to this court to expand the IC's jurisdiction to include investigation of the Lewinsky matter. This the court did on January 16, 1998. Soon thereafter, the media reported that the President was under investigation for possible perjury or obstruction of justice in connection with the *Jones v. Clinton* litigation.

Consequently, in the ensuing media frenzy, Linda Tripp became the focus of intense interest. In mid-March, 1998, a reporter for *New Yorker* magazine called Bacon, explaining that she was researching a story on Tripp and had uncovered information suggesting that Tripp had been arrested in 1969. She inquired of Bacon whether this arrest had been disclosed on Tripp's security clearance application form. Bacon asked one of his deputies, Clifford H. Bernath, the fee petitioner here, to follow up on the reporter's inquiry. After obtaining copies of the relevant forms, Bernath, with Bacon's knowledge, called the reporter and told her that Tripp had not disclosed any arrest record. The reporter then used this information in her *New Yorker* article. Such information was prohibited from being disclosed under the Privacy Act, *see* 5 U.S.C. § 552a(b).

At the time of the release of this information, Tripp was a cooperating witness in the IC's investigation. Upon learning that information protected by the Privacy Act had been released, the IC conducted grand jury proceedings to determine if the release by Bacon and Bernath was part of an effort to intimidate Tripp in her capacity as a cooperating witness or part of an effort

to obstruct justice. Ultimately the IC decided that there was insufficient evidence to bring any indictments in the matter. Pursuant to § 593(f)(1) of the Act, Bernath now petitions the court for attorneys' fees in the amount of $6,093.75 that he claims were incurred in his defense of the IC's investigation.

## Discussion

The Independent Counsel statute provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

28 U.S.C. § 593(f)(1). Accordingly, in order to obtain an attorneys' fees award under the statute, a petitioner must show that all of the following requirements are met: (1) the petitioner is a subject of the investigation, (2) the fees were incurred during the investigation, (3) the fees would not have been incurred but for the requirements of the Act, and (4) the fees are reasonable. *See In re North (Dutton Fee Application)*, 11 F.3d 1075, 1077-82 (D.C. Cir., Spec. Div., 1993) (per curiam). The petitioner "bears the burden of establishing all elements of his entitlement." *In re North (Reagan Fee Application)*, 94 F.3d 685, 690 (D.C. Cir., Spec. Div., 1996) (per curiam). The main issue in contention appears to be whether Bernath has fulfilled the "but for" requirement of the Act.

We have in the past held that "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case*, 890 F.2d 451, 452 (D.C. Cir., Spec. Div., 1989) (per curiam). On numerous occasions we have also held that "the contemplation of the legislation is not that subjects of independent counsel investigations will be reimbursed for all legal fees, but only . . . for those legal fees that would not have been incurred by a similarly-situated subject investigated in the absence of the Act." *In re Madison Guaranty Savings & Loan (Clinton Fee Application),* 334 F.3d 1119, 1123 (D.C. Cir., Spec. Div., 2003) (per curiam). Bernath appears to argue that he passes the "but for" test for three reasons. First, he claims that the OIC's pursuit of him for a possible criminal violation of the Privacy Act was "very unusual" in that violations of the Act are considered to be only "infractions" that are subject to the lowest sentencing level and therefore rarely prosecuted by the DOJ. In other words, he appears to be asserting that the only allegation surrounding his conduct concerned a violation of the Privacy Act, and since the DOJ rarely prosecutes such violations, then in the absence of the Act the investigation of the matter would have fallen to the DOJ which would not have bothered with it.

Second, he compares his situation to that of certain fee applicants who were caught up in the Iran/Contra independent counsel investigation. In those cases, the court found the "but for" requirement fulfilled as the independent counsel had investigated them for criminal conspiracy to violate the Boland Amendments, which the court noted would not have been undertaken by a politically appointed Attorney General. *See In re North (Regan Fee Application)*, 72 F.3d 891, 895 (D.C. Cir., Spec. Div., 1995); *In re North (Dutton Fee Application)*, 11 F.3d at 1080-81. Bernath argues that in a similar fashion he too has fulfilled the "but for" requirement because "the Attorney General would not have investigated the Lewinsky matter,"

although he does not explain why he believes this latter statement to be true.

Third, Bernath asserts that when he responded to the *New Yorker* reporter's inquiry he was acting "within the scope of his employment," and that "[u]nder normal circumstances" the case would have been handled administratively. It was investigated by the OIC, according to Bernath, because the OIC believed "that this release might have been made to obstruct the OIC's investigation," and also because "of pressure from partisan political legislators."

In her evaluation, the IC first takes issue with Bernath's assertion that in the absence of the Act the Attorney General would not have investigated the Lewinsky matter. She notes that the allegations concerned "the serious crimes of perjury and obstruction of justice" which are "precisely the type of crimes federal prosecutors routinely investigate and prosecute."

The IC then disputes Bernath's claim that when he gave the information concerning Tripp to the *New Yorker* reporter he was acting within the scope of his employment and therefore any question concerning these actions would have been handled administratively. According to the IC, such actions "would have caused any prosecutor to investigate what appeared to be an attempt to use confidential government information illegally to intimidate witnesses in an ongoing criminal investigation."

The DOJ likewise disputes Bernath's contention that the Lewinsky matter would not have been investigated by an Attorney General. Like the IC, the DOJ notes that the allegations surrounding the matter primarily concerned perjury and obstruction of justice, and that these allegations were serious and credible. As such, in the DOJ's opinion, there would have been an investigation of the matter even in the absence of the

Act.

The DOJ also takes issue with Bernath's claim that the DOJ does not investigate allegations of criminal violations of the Privacy Act. Asserting that this claim by Bernath ignores the true nature of the IC's investigation, the DOJ again emphasizes that the investigation concerned more broadly whether Bernath's actions were part of a larger effort to obstruct the IC's investigation, and that the DOJ "of course investigates and prosecutes individuals that it believes have conspired to obstruct justice." In any event the DOJ notes that although rare, it does in fact investigate violations of the Privacy Act. Indeed, after the IC declined to prosecute Bernath for obstruction of justice, it forwarded the case to the DOJ for disposition of the Privacy Act allegation, which the DOJ states was then investigated. Consequently, asserts the DOJ, this investigation by the DOJ of Bernath for a violation of the Privacy Act makes it difficult for Bernath to argue that such an investigation would not have taken place in the absence of the Act.

\* \* \* \* \* \* \* \* \*

After consideration of the parties' views, we conclude that Bernath has not put forth a convincing argument that he has passed the "but for" test. His first claim, that the DOJ would not have bothered to investigate him for an offense as minor as a violation of the Privacy Act, skews the facts. As the DOJ in its evaluation points out, the investigation of Bernath concerned much more than just the Privacy Act. It also involved the possibility of a conspiracy to obstruct justice by intimidating a government witness, which the DOJ notes is a crime that it "of course investigates and prosecutes." *See Bacon Fee Application*, at 1321.

Bernath's second argument, that the Attorney General would not have investigated the Lewinsky matter, also fails. When we considered the fee reimbursement request of Lewinsky herself, we had an opportunity to detail the seriousness of the charges involved:

> [t]he underlying allegations were that Lewinsky lied under oath in a pending lawsuit against the President of the United States; that she was planning to lie again and had encouraged others to lie; that she had spoken to the President and an associate of the President about the matter; and, at least implicitly, that the President and his associate may themselves have been involved in the wrongdoing.

*In re Madison Guar. Sav. & Loan (Lewinsky Fee Application)*, 352 F.3d 437, 445 (D.C. Cir., Spec. Div., 2003) (per curiam). We then went on to ask whether "evidence of criminal wrongdoing by an incumbent President and accomplices of that President [would] have escaped an investigation of similar scope in the absence of the Ethics in Government Act," and citing to the pre-Act investigation of the Watergate matter, answered in the negative. *Id.* at 445-46. Consequently, Bernath's claim that the "the Attorney General would not have investigated the Lewinsky matter" is without merit.

For the same reasons, Bernath's final argument, that absent the existence of the IC's investigation his case would have been handled administratively, is also meritless. Again, he appears to be implying that if the IC had not investigated him then no criminal investigation of him would ever have occurred. But as Bernath himself points out, the IC investigated the matter because the IC believed that the release of the information concerning Tripp was an attempt to obstruct the IC's investigation. As mentioned, absent the existence of the IC, the release of this information concerning Tripp would have been

the subject of a DOJ investigation, which in all likelihood would have included a determination as to whether there was any attempt to obstruct *that* investigation.

## Conclusion

For the reasons set forth above, the petition for fees of Clifford H. Bernath is denied as he has failed to satisfy the "but for" requirement of the Act.